### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| BVG Properties, LLC, et al., | Case No. 1:25-cv-00430-PAB |
| Plaintiffs, | |
| -vs- | JUDGE PAMELA A. BARKER |
| City of Cleveland, et al., | MEMORANDUM OPINION AND ORDER |
| Defendants. | |

Currently pending before the Court are: (i) Plaintiffs BVG Properties, LLC, 7006 Detroit Road, LLC, and 1415-1419 West 101 LLC's (collectively, "Plaintiffs") Amended Motion for Preliminary Injunction ("Motion for Preliminary Injunction") (Doc. No. 23); and (ii) Defendants City of Cleveland ("Cleveland") and Sally Martin a/k/a Sally Martin O'Toole's[1] ("O'Toole") (collectively, "Defendants") Motion to Dismiss Amended Complaint ("Motion to Dismiss") (Doc. No. 26).  For the following reasons, Defendants' Motion to Dismiss is **GRANTED** and Plaintiffs' Motion for Preliminary Injunction is **DENIED AS MOOT**.

## I.    Factual Allegations

Plaintiffs' Amended Verified Complaint sets forth the following allegations.[2]  (Doc. No. 8.)

---

[1] Defendant O'Toole is sued in her official capacity as Director of Department of Building and Housing for Cleveland. (Doc. No. 8 at PageID #276.)

[2] On March 3, 2025, Plaintiffs filed their initial Verified Complaint.  (Doc. No. 1.)  On March 31, 2025, Plaintiffs filed their Amended Verified Complaint, in which Plaintiffs added Judge W. Mona Scott and Cleveland Municipal Court, Housing Division as parties, accompanied by an Amended Motion for Temporary Restraining Order and for Preliminary Injunction.  (Doc. Nos. 8, 9.)  One day later, Plaintiffs filed a Motion to Dismiss Judge Scott and Cleveland Housing Court from the case, which this Court granted.  (Doc. No. 12; 4/1/2025 Docket Entry.)  As a result, the operative Complaint and Motion for Preliminary Injunction (*see infra* Section II) still reference both of them.  (*See* Doc. Nos. 8, 23.)  Because Judge Scott and Cleveland Housing Court have since been dismissed from this action, the Court disregards the portions of the pleadings relevant to the previous claims asserted against them.

### A.     Parties

Plaintiffs are duly registered limited liability companies organized and operating in the State of Ohio.  (*Id.* at PageID #277.)  Plaintiffs are the titled property owners of various residential rental properties located in the County of Cuyahoga and the City of Cleveland, Ohio.  (*Id.* at PageID #277–78.)  Cleveland is a municipality organized under the State of Ohio Constitution and the laws of the State of Ohio.  (*Id.* at PageID #278.)  O'Toole, in her official capacity, is the current Director of Building and Housing for Cleveland.  (*Id.*)

### B.     Relevant Framework

#### 1.     Predatory Landlord Legislation and Chapter 365

In or about 2023, Defendants "began the process of enacting new legislation relative to building and housing called 'Predatory Landlord Legislative Package' (hereinafter 'Predatory Landlord Legislation')."[3]  (*Id.* at PageID #279.)  "The Predatory Landlord Legislation was introduced as an emergency ordinance at a Cleveland City Council meeting on September 18, 2023 … [and] was passed on February 5, 2024."  (*Id.*)  According to Plaintiffs, "[t]he Predatory Landlord Legislation revised several existing provisions in Cleveland Cod. Ord. Chapter 365 [(hereinafter "Chapter 365" or "§ 365")] and added new provisions."  (*Id.* at PageID #279–80.)

§ 365 is titled "Rental Registration and Lead-Safe Certification."  (*Id.* at PageID #280.)  Per § 365.01(l), an owner "means the person, partnership or corporation that holds title to the residential rental unit."  (*Id.*; Doc. No. 8-2 at PageID #307.)  According to Plaintiffs, "[b]y its own definition, limited liability companies are not owners."  (Doc. No. 8 at PageID #280.)

---

[3] According to Plaintiffs, "[f]or 'branding' reasons, Defendants repackaged their illegal proposed laws as pro tenant 'Residents First' legislation in or about late summer or early fall of 2023."  (Doc. No. 8 at PageID #279.)

Plaintiffs allege that "[t]he Predatory Landlord Legislation added a local agent in charge requirement for certain property owners of non-owner occupied residential rental units in the City of Cleveland." (*Id.*)  Specifically, § 365.01(k) defines a "Local Agent in Charge," in relevant part, as a "natural person who is of sound mind and at least eighteen (18) years of age and who is designated by the owner." (*Id.*; Doc. No. 8-2 at PageID #307.)  § 365.01(k)(1) further provides, in relevant part, that "[i]f the owner is a natural person and a resident of Cuyahoga County or a contiguous county, then the Local Agent in Charge may be the owner," but "[o]therwise, the Local Agent in Charge shall be a natural person who resides within Cuyahoga County." (*Id.*)  In situations where the Local Agent in Charge is not the owner, § 365.01(k)(2) provides, in relevant part, that "the Local Agent in Charge shall … accept responsibility with the owner (including any potential criminal, civil, or administrative liability) for the maintenance and management of the premises during any time when such person is identified as the Local Agent in Charge." (*Id.*)

§ 365.02 sets forth the registration requirements for non-owner-occupied residential units. Specifically, § 365.02(a) provides, in relevant part, that "[a]n owner of a non-owner-occupied residential unit or units located in the City shall apply to register each unit … [and] [u]pon approval of an application, the owner shall receive a Certificate of Non-Owner-Occupied Residential Unit Registration" (hereinafter "Registration Certificate").  (Doc. No. 8 at PageID #281; Doc. No. 8-2 at PageID #308.)  § 365.02(a) also provides that "[s]uch an owner, before renting such a unit, shall obtain a Certificate Approving Rental Occupancy" (hereinafter "Rental Certificate").  (*Id.*)

Pursuant to § 365.02(b)(2), an application for a Registration Certificate "shall include, but is not limited to … [t]he name, address, telephone number and email address of a Local Agent in Charge."  (Doc. No. 8 at PageID #281–82; Doc. No. 8-2 at PageID #308.)  Under § 365.02(c),

3

following receipt of such application, the Director shall issue a Registration Certificate indicating, in relevant part, that the unit is "registered with the City of Cleveland Department of Building and Housing, which means that the owner has provided information to the Department concerning the property as required by law."  (Doc. No. 8 at PageID #282; Doc. No. 8-2 at PageID #308.)

Additionally, Plaintiffs allege that the Predatory Landlord Legislation amended §365.02(d) "to include a litany of documentation that the owner must provide to Defendants in order to be issued a [Rental Certificate]."  (Doc. No. 8 at PageID #285.)  Specifically, § 365.02(d) provides, in relevant part, that an owner must apply for and obtain a Rental Certificate "[b]efore a non-owner-occupied residential unit that is registered under this section can be rented."  (*Id.* at PageID #283; Doc. No. 8-2 at PageID #308.)  According to Plaintiffs, "the issuance of a [Rental Certificate] [is] contingent upon the owner being current in his/her/its property taxes, current in his/her/its utility bills and compliant with several other ordinances."[4]  (*Id.* at PageID #283.)

### 2. Cleveland Housing Court and Local Housing Rules

Plaintiffs allege that "Defendant Cleveland knew at the time that it amended the ordinance to require[] additional documentation that Judge W. Mona Scott [(hereinafter "Judge Scott")], the sole judge of the Cleveland Municipal Court, Housing Division [hereinafter "Cleveland Housing Court")], per the Cleveland [Housing Court] Local Rules [(hereinafter "Local Housing Rules")], would not grant forcible entry and detainer (eviction) actions absent the landlord providing a current rental registration issued by Cleveland prior to the [Cleveland Housing Court] issuing judgment on an eviction."  (Doc. No. 8 at PageID #285.)  According to Plaintiffs, Local Housing Rule 3(B)(4)

---

[4] The complete list of requirements for obtaining a Rental Certificate can be found in § 365.02(d).  (*See* Doc. No. 8-2 at PageID #308.)

4

provides that "[c]omplaints in eviction must include, at the time of filing, documentary evidence from the City of Cleveland Department of Building and Housing verifying the active registration of the premises" in accordance with Chapter 365.  (*Id.*)  Plaintiffs further allege that Local Housing Rule 3(B)(5) provides that "[f]ailure to include sufficient documentation may result in sanctions, up to the dismissal of the complaint without prejudice."  (*Id.* at PageID #286.)

Plaintiffs allege that at the time Cleveland amended Chapter 365, it "had actual knowledge of the Eighth District Court of Appeals' decision" in *Shaker House LLC v. Daniel*, 2022-Ohio-2778, 193 N.E.3d 1159 (8th Dist. 2022).  (*Id.*)  According to Plaintiffs, in *Shaker House*, the Eighth District Court of Appeals ruled that a Local Housing Rule that "required landlords to provide proof of compliance with the lead-safe certification set forth in [§ 365.04] in order for Judge Scott to grant an eviction was unlawful" because it "conflicted with the provisions of Ohio Revised Code Chapter 1923 which governs forcible entry and detainer actions."  (*Id.*)  Plaintiffs allege that "Defendant Cleveland intentionally circumvented the Eighth District Court of Appeals decision in *Shaker House, LLC v. Daniel* … by making proof of lead-safe certification also contingent upon the issuance of a rental registration certificate."  (*Id.* at PageID #287.)

According to Plaintiffs, "[d]espite said ruling, Judge Scott continues to enforce a substantively identical rule to the one ruled unlawful in *Shaker House LLC v. Daniel*," and "[a]t the time Defendant Cleveland amended [§ 365.02], Defendants had actual knowledge that the continued enforcement of [Local Housing Rules] 3(B)(4) and 3(B)(5) were unlawful."  (*Id.* at PageID #286.)  Plaintiffs allege that "Cleveland repeatedly confirmed with Judge Scott that she was still enforcing [Local Housing Rules] 3(B)(4) and 3(B)(5)," and that "Cleveland, with … Judge Scott's assistance, effectively made a landlord's full access to the court system as it relates to evictions contingent upon an owner being

5

current in property taxes, being current in utility bills, and demonstrating compliance with other ordinances."  (*Id.* at PageID #286–87.)

### 3.      Registration Fees and Alleged Enforcement and Penalties

"[§ 365.03] requires owners of residential rental property in the City of Cleveland to pay yearly rental registration fees."[5]  (*Id.* at PageID #287.)  Plaintiffs allege that "[a]s of 2025, Defendants require all landlords to register their residential rental properties and to pay the rental registration fees online via the City of Cleveland Citizen Portal … [and that] there is no designated person in the Cleveland Department of Building and Housing tasked with physically accepting the rental registration documents and the rental registration fee."  (*Id.* at PageID #288.)

Plaintiffs allege that "Defendants have enforced and continue to enforce [Chapter 365] against Plaintiffs … under threat of assessment of fines, criminal prosecution and other penalties under the law."  (*Id.*)  According to Plaintiffs, "the failure to register may result in Defendants assessing a late fee of $100.00 per rental registration certificate per [§ 365.03]."  (*Id.*)  Similarly, Plaintiffs allege that the failure to comply with Chapter 365 "may result in legal action by Defendants against Plaintiffs pursuant to [§ 367.05] and/or [§ 367.14]."[6]  (*Id.*)  Plaintiffs also allege that "[f]ailure to comply with [§ 365.02 or § 365.04] is a first degree misdemeanor pursuant to [§ 367.99]."[7]  (*Id.*)

---

[5] The registration fee requirements are set forth more fully in § 365.03 and need not be set forth herein.  (*See* Doc. No. 8-2 at PageID #309.)

[6] § 367.05 and § 367.14 set forth various actions that may be taken by the Director of Law in response to violations of Chapter 365.  (*See* Doc. Nos. 8-3, 8-4.)

[7] The full text of § 367.99 is attached to Plaintiffs' Complaint.  (*See* Doc. No. 8-5.)

### C.      Application to Plaintiffs

According to Plaintiffs, they have "been harmed and continue to be harmed by Defendants unlawful enforcement of [Chapter 365] as Defendants have threatened and continue to threaten Plaintiffs that their failure to comply with [Chapter 365], which necessarily requires Plaintiffs to waive rights afforded to them under the U.S. Constitution, federal law, the Ohio Constitution and Ohio law, may result in the assessment of fines, criminal prosecution, and other penalties under the law." (*Id.* at PageID #288–89.)

Plaintiffs allege that they are limited liability companies and "have non-owner-occupied residential units in the City of Cleveland." (*Id.* at PageID #289.)  According to Plaintiffs, "[s]ince limited liability companies are not owners as defined by [§ 365.01(l)], Plaintiffs are not required to comply with any obligations imposed upon owners pursuant to [Chapter 365]." (*Id.*)  Yet, "Defendants have unlawfully enforced and continue to unlawfully enforce [Chapter 365] against Plaintiffs despite the fact Defendants have actual knowledge that Plaintiffs are not required to comply with [Chapter 365]." (*Id.*)  Finally, Plaintiffs allege that the relevant framework—including § 365.01(k) and § 365.02 governing the Local Agent in Charge requirement and the required registrations described above—is unconstitutional and unlawful under both federal and Ohio law. (*See generally* Doc. No. 8 at PageID #290–94.)

## II.   Procedural History

On March 4, 2025, Plaintiffs filed a Verified Complaint for Declaratory Judgment and Injunctive Relief and Damages against Defendants.  (Doc. No. 1.)  On March 28, 2025, Plaintiffs filed their initial Motion for Temporary Restraining Order and Preliminary Injunction ("Initial Motion for Injunction").  (Doc. No. 6.)  That same day, the Court set a telephonic conference with

the parties for March 31, 2025, to address Plaintiffs' request for a Temporary Restraining Order ("TRO").  (*See* 3/28/2025 Docket Entry.)  On March 31, 2025, the Court conducted a telephonic conference to address the request for a TRO.  (*See* 3/31/2025 Docket Entry.)  The parties did not reach a resolution during the telephonic conference, and thus, the Court scheduled a TRO Hearing for April 1, 2025.  (*See id.*)

On March 31, 2025, following the telephonic conference, Plaintiffs filed a Verified Amended Complaint ("Complaint") adding Judge W. Mona Scott and Cleveland Municipal Court, Housing Division as Defendants to the action.  (Doc. No. 8.)  Plaintiffs' Complaint asserts the following eight counts: (1) Declaratory Judgment and Injunction; (2) Violation of Equal Protection and Due Process Under the U.S. Constitution, Amendment XIV and Violations of Ohio Constitution, Article I, § 1, § 2, and § 16 (42 U.S.C. § 1983) [sic]; (3) [same]; (4) [same]; (5) [same][8]; (6) Unjust Enrichment and Restitution; (7) Unjust Enrichment and Restitution[9]; (8) Violation of Ohio Law.  On March 31, 2025, Plaintiffs also filed an Amended Motion for Temporary Restraining Order and Preliminary Injunction ("Amended Motion for Injunction").  (Doc. No. 9.)

On April 1, 2025, the Court conducted a hearing to address the request for a TRO.  (*See* 4/2/2025 Docket Entry.)  At the hearing, the parties reached an agreement to preserve the status quo while the preliminary injunction request was addressed.  (*See id.*)  A briefing schedule was set in relation to Plaintiffs' motion for a preliminary injunction, which included Plaintiffs filing a supplement clarifying the precise claim(s) set forth in the Complaint that served as the bas(es) for

---

[8] In Counts Three through Five, Plaintiffs reference the same provisions as the basis of their claims but make different arguments under each count.

[9] Plaintiffs include two separate counts for Unjust Enrichment and Restitution, each with slightly different allegations. (*See* Doc. No. 8 at PageID #300–01.)

8

their preliminary injunction request, and any arguments as to Plaintiffs' likelihood of success on the specific claim(s) identified.  (*See id.*)

On April 8, 2025, Plaintiffs filed a Supplemental Motion for Preliminary Injunction ("First Supplemental Motion").  (Doc. No. 14.)  On April 9, 2025, Defendants filed a Motion to Strike the First Supplemental Motion, to which Plaintiffs filed an Opposition the same day.  (Doc. Nos. 16, 18.) Plaintiffs also filed a Motion for Leave to File an Amended Supplemental Motion for Preliminary Injunction, and thereafter proceeded to file a second Supplemental Motion ("Second Supplemental Motion").  (Doc. Nos. 19, 21.)

On April 11, 2025, the Court issued an Order granting Defendants' Motion to Strike and striking Plaintiffs' First Supplemental Motion and Second Supplemental Motion.  (Doc. No. 22.)  The Court also denied as moot Plaintiffs' Initial Motion for Injunction and Amended Motion for Injunction.  (*Id.*)  In its Order, the Court clarified that Plaintiffs were meant to file a short supplement clarifying which claims from the Amended Complaint corresponded to the preliminary injunction request, rather than filing a new Motion.  (*See id.*)  The Court thus ordered Plaintiffs to re-file their initial Motion seeking a preliminary injunction as originally filed (with the addition of a table of contents and authorities, statement of issues, and summary of argument), and to file a supplement thereafter that specifically addressed the issues raised by the Court.  (*See id.*)

On April 14, 2025, Plaintiffs re-filed their Motion for Preliminary Injunction which is currently pending before the Court.[10]  (Doc. No. 23.)  That same day, Plaintiffs also filed their

---

[10] Because Plaintiffs were ordered to re-file their initial Motion exactly as originally filed (aside from the addition of the table of contents, table of authorities, statement of the issue(s) to be decided, and summary of argument), the Motion still includes the portions addressing: (i) the initial request for TRO that has since been addressed; and (ii) Judge W. Mona Scott and Cleveland Housing Court as named-Defendants, who have since been dismissed from the action.  (*See generally* Doc. No. 23.)  The Court disregards those portions of the Motion for purposes of this Opinion.

Supplement to their Motion for Preliminary Injunction (hereinafter "Supplement").  (Doc. No. 24.)

On April 28, 2025, Defendants filed their Opposition to Plaintiffs' Motion for Preliminary Injunction

("Opposition to Motion for Injunction").  (Doc. No. 25.)

On May 6, 2025, Defendants filed a Motion to Dismiss Plaintiffs' Amended Complaint

("Motion to Dismiss").  (Doc. No. 26.)  The Court thus set a telephonic conference for May 12, 2025,

to discuss the effect of the Motion to Dismiss on Plaintiffs' Motion for Preliminary Injunction.  (*See*

5/8/2025 Docket Entry.)  On May 12, 2025, the Court conducted the telephonic conference with the

parties.  (*See* 5/12/2025 Docket Entry.)   During the conference, Defendants agreed to extend

Plaintiffs' temporary registrations until September 1, 2025, to allow sufficient time for the parties to

complete their briefing as to the Motion for Preliminary Injunction and Motion to Dismiss and for

the Court to issue a decision on the Motions.  (*See id.*)  Further, the Court set a new briefing schedule

in which Plaintiffs would file a combined Reply in Support of their Motion for Preliminary Injunction

and Opposition to Defendants' Motion to Dismiss (hereinafter "Combined Response"), to which

Defendants would thereafter file a Reply in Support of their Motion to Dismiss.  (*See id.*)

On June 2, 2025, Plaintiffs filed their Combined Response.  (Doc. No. 30.)  On June 17, 2025,

Defendants filed their Reply in Support of their Motion to Dismiss ("Reply").  (Doc. No. 31.)

Accordingly, Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss are

ripe for review.

## III.    Legal Standards

### A.    Motion to Dismiss

#### 1.    Rule 12(b)(1)

Fed. R. Civ. P. 12(b)(1) provides for dismissal when a court lacks subject matter jurisdiction. Without subject matter jurisdiction, a federal court lacks authority to hear a case.  *Thornton v. Sw. Detroit Hosp.*, 895 F.2d 1131, 1133 (6th Cir. 1990).  The standard of review of a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on whether the defendant makes a facial or factual challenge to subject matter jurisdiction.  *Wayside Church v. Van Buren County,* 847 F.3d 812, 816-17 (6th Cir. 2017).  A facial attack "questions merely the sufficiency of the pleading" and requires the district court to "take[] the allegations in the complaint as true."  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007).  To survive a facial attack, the complaint must contain a short and plain statement of the grounds for jurisdiction.  *See Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016); *Ogle v. Ohio Civil Service Employees Ass'n, AFSCME*, Local 11, 397 F. Supp. 3d 1076, 1081-82 (S.D. Ohio 2019).

By contrast, a factual attack "raises a factual controversy requiring the district court 'to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist.'" *Wayside Church,* 847 F.3d at 817 (quoting *Gentek Bldg. Prods., Inc*., 491 F.3d at 330).  The plaintiff has the burden of proving jurisdiction when subject matter jurisdiction is challenged.  *Rogers v. Stratton Indus*., 798 F.2d 913, 915 (6th Cir. 1986).  The court may allow "affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

11

### 2.     Rule 12(b)(6)

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)).  For purposes of both Rule 12(b)(6) and Rule 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly*, 550 U.S. at 555–556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific

12

facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### B. Preliminary Injunction

When considering a motion for preliminary injunction, the Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without an injunction; (3) whether issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. *See National Credit Union Administration Board v. Jurcevic*, 867 F.3d 616, 622 (6th Cir. 2017); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). *See also Palmer v. Harris*, 2018 WL 6062305 at *6 (N.D. Ohio Nov. 20, 2018). These factors should be balanced against each other but are "not prerequisites that must be met." *In re Delorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). *See also Avery Dennison Corp. v. Juhasz*, 924 F.Supp.2d 893, 899 (N.D. Ohio 2013).

A party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000).

13

## IV.     Analysis

The Court begins with its evaluation of Defendants' Motion to Dismiss.[11]

### A.     Motion to Dismiss

In their Motion to Dismiss, Defendants argue that Plaintiffs' Complaint should be dismissed under both Rule 12(b)(1) as related to jurisdiction and under Rule 12(b)(6) as related to the merits of Plaintiffs' claims.  (*See generally* Doc. No. 26.)  "Subject matter jurisdiction constitutes a threshold issue."  *Muminov v. Sessions*, 2018 WL 5298386, at *1 (N.D. Ohio Oct. 25, 2018) (citing *Moir v. Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)); *see also P.I. & I. Motor Express, Inc. v. RLI Insurance Company*, 499 F. Supp.3d 486 (N.D. Ohio 2020) ("Before turning to the merits, the Court must address the threshold issue of subject matter jurisdiction.").  The Court thus begins with the parties' jurisdictional arguments.

### 1.     *Fire-Dex* Jurisdictional Standard for Mixed Actions[12]

The Sixth Circuit has recently clarified the standard for evaluating whether to exercise jurisdiction in a "'mixed action'—one that seeks both coercive relief (damages) and non-coercive

---

[11] There is significant overlap between Defendants' Motion to Dismiss and Opposition to Plaintiffs' Motion for Preliminary Injunction with respect to jurisdictional arguments.  (*See, e.g.*, Doc. No. 25 at PageID #1479; Doc. No. 26 at PageID #1505.)  Indeed, in their Motion to Dismiss, Defendants cite back to their Opposition on various points.  (*See, e.g.*, Doc. No. 26 at PageID #1505.)  Given the significant overlap in issues, Plaintiffs filed a Combined Response to Defendants' Motion to Dismiss and in support of their own Motion for Preliminary Injunction.  (Doc. No. 30.)  In evaluating the jurisdictional arguments at issue and in light of this overlap, the Court may reference arguments contained in both filings.

[12] On June 2, 2025, the Sixth Circuit issued an opinion clarifying the standard for exercising jurisdiction in "mixed actions."  *See supra* Section IV.A.1.  One day later, on June 3, 2025, Plaintiffs filed their Combined Response and did not address the newly issued *Fire-Dex* opinion, instead relying upon previous opinions in the *Fire-Dex* line of cases and other Sixth Circuit precedent.  (*See generally* Doc. No. 30 at PageID #1537–43.)  On June 17, 2025, Defendants filed their Reply.  (Doc. No. 31.)  Therein, Defendants briefly addressed *Fire-Dex*, arguing that it does not support Plaintiffs' claims because even "[i]n mixed actions … the district court still has discretion to decline jurisdiction with the background principles of federal jurisdiction top of mind, such as abstention."  (*Id.*)  However, Defendants did not address the impact on the *level* of discretion in cases where a "declaratory claim in a mixed action presents the same legal issue as the coercive claim over which the district court *must* exercise jurisdiction."  *Fire-Dex*, 139 F.4th at 529 (emphasis added).  In

14

(declaratory) relief." *Fire-Dex, LLC v. Admiral Ins. Co.*, 139 F.4th 519, 526 (6th Cir. 2025). In *Fire-Dex*, the plaintiff filed an action in state court seeking declaratory relief as well as damages for breach of contract. *Id.* at 525. The defendant removed the case to federal court on the basis of diversity jurisdiction, and the plaintiff moved to remand the case back to state court. *Id.* The district court declined to exercise jurisdiction over the declaratory claims and remanded them back to state court, while retaining the damages claims and staying them pending resolution of the state declaratory claims. *Id.*

On appeal to the Sixth Circuit, the court addressed "what standard or standards should guide the district court in deciding whether to exercise jurisdiction—ones that normally attach to claims for coercive relief (like damages and injunctions), those that attach to claims for declaratory relief, or some combination of the two[.]" *Id.* at 527. In summarizing these standards, the court first referenced the general rule that "[w]hen Congress vests jurisdiction in a federal court, the court generally must adhere to that command." *Id.* at 526. The court then acknowledged that certain "exceptions to the normal rule of mandatory jurisdiction" exist by way of "traditional abstention doctrines like *Pullman*, *Younger*, and others …" *Id.* Thereafter, the court noted that "[w]hile discretion to abstain from exercising jurisdiction is rare, declaratory judgments are different … [because] whether to grant declaratory relief is discretionary." *Id.* at 526–27. In other words, "district courts have much more leeway in declining to exercise jurisdiction over a claim for declaratory relief than a claim for damages or an injunction" because "[i]n the declaratory judgment context, the normal principle that

---

light of the clarified standard set forth in *Fire-Dex*, the Court will follow that guidance in its evaluation of jurisdiction, as explained *infra*.

federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 527.

Based on the above principles, the Sixth Circuit clarified the appropriate standard as follows. "If the district court has subject matter jurisdiction over a claim for coercive relief, the court must exercise jurisdiction over that claim unless a traditional abstention doctrine applies."[13] *Id.* at 528.  As for the claim for declaratory relief, "the more permissive discretionary standard applies regardless of whether the declaratory claim is part of a mixed action" because "[t]he fact that the declaratory claim is paired with a claim for coercive relief does not—as a formal matter—deprive the district court of its discretion under the Declaratory Judgment Act." *Id.*  However, "the presence of a coercive claim will often significantly reduce the district court's discretion to abstain from adjudicating the declaratory relief claim." *Id.*  at 528.

In other words, "[w]hen a declaratory claim in a mixed action presents the same legal issue as the coercive claim over which the district court *must*[14] exercise jurisdiction, these equitable considerations will counsel heavily in favor of not abstaining." *Id.* at 529 (emphasis added).  For example, where the coercive claim and declaratory claim hinge on the same substantive legal issue, abstaining from the declaratory claim "would risk creating the sort of 'piecemeal litigation' that abstention aims to avoid and the 'duplicitous litigation' that exercises of discretion under the

---

[13] As noted by the Sixth Circuit, this is true regardless of whether the "claim for coercive relief" is a claim for injunctive relief or for damages.  *See Fire-Dex*, 139 F.4th at 527–28 (discussing *Meredith v. City of Winter Haven*, 320 U.S. 228 (1943) which involved a mixed action for declaratory and injunctive relief and concluding that "*Meredith's* holding regarding claims for equitable relief in mixed actions applies with full force to damages claims in mixed actions").

[14] Importantly, this rule applies where a court *must* exercise jurisdiction over a coercive claim because no traditional abstention doctrine applies to the coercive claim.  *See Fire-Dex*, 139 F.4th at 527 ("If the district court has subject matter jurisdiction over a claim for coercive relief, the court must exercise jurisdiction over that claim *unless a traditional abstention doctrine applies*.") (emphasis added).

16

Declaratory Judgment Act are designed to dodge." *Id.* at 528–29.  Indeed, if a court were to abstain from the declaratory claim but still exercise mandatory jurisdiction over the coercive claim—thereby requiring the court to evaluate the same issue presented by the declaratory claim—"the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated." *Id.* at 529.  For this reason, "[w]hen the coercive and declaratory claims in a mixed action are tightly linked, it would most likely be an abuse of discretion to abstain on the declaratory claims." *Id.*

Importantly, however, the Sixth Circuit rejected the notion that it would *always* constitute reversible error for a district court to decline jurisdiction in such cases or that a mandatory coercive claim strips a district court of *all* discretion as to the declaratory claim:

> "Again, a court very well *may* abuse its discretion in deciding to abstain from the declaratory claim.  And as explained above, the fact that a district court must exercise jurisdiction over the coercive claims in a mixed action *may* drastically *reduce* its discretion to not exercise jurisdiction over the declaratory claims.  But there's no legal basis for formally stripping a district court of its discretion over whether to hear a declaratory claim simply because that claim is part of a mixed action."

*Id.* at 530 (emphasis added) (citations omitted).  Rather, a district court's discretion—while reduced—may nevertheless still be exercised under appropriate circumstances.[15]  *See id.*

### 2.     Application of *Fire-Dex* Standard

Having set forth the above standard, the Court turns to the present case.  Following *Fire-Dex*, the Court first evaluates the federal coercive claims[16] raised in Plaintiffs' Complaint—namely, the §

---

[15] *See also Fire-Dex*, 139 F.4th at 534 ("Recall that in a mixed action, a district court will *often* abuse its discretion by abstaining on a declaratory claim where the coercive claim over which the district court must exercise jurisdiction raises the same legal issue as the accompanying declaratory relief claim.") (emphasis added); *id.* ("[T]he district court's possession of mandatory jurisdiction over the coercive claims in a mixed action severely *constrains* its discretion to abstain as to the declaratory claims …") (emphasis added).

[16] The Court notes that Plaintiffs also raise various state law claims in their Complaint.  (*See* Doc. No. 8 at PageID #300–02.)  However, unlike in *Fire-Dex*, the state law claims in this case are not presented before this Court by way of diversity jurisdiction—which would require this Court to exercise mandatory jurisdiction.  *See Fire-Dex*, 139 F.4th at 535–36 ("Since 1789, Congress has determined that we should adjudicate certain cases brought by citizens hailing from different

1983 claims brought under Counts Two through Five (hereinafter "§ 1983 claims"). (Doc. No. 8 at PageID #295–300.) This is because the Court's evaluation of the § 1983 claims will directly impact the level of discretion to be afforded as related to the declaratory judgment claim. *See supra.*

### a)    Whether Traditional Abstention Doctrines Apply

The Court begins with whether any traditional abstention doctrines apply to the present case.

In their Motion to Dismiss, Defendants argue that the entire action should be dismissed under abstention doctrines such as *Pullman*.[17] (Doc. No. 26 at PageID #1505.) Specifically, Defendants contend that Plaintiffs' "primary argument is that the ordinances do not apply to them," and that "[i]f they do not apply (as Plaintiffs argue), then this Court has no need to give an advisory opinion as to the constitutionality of the ordinance as applied to them." (*Id.*) Thus, Defendants assert that "[s]tate court interpretation of this purely state law issue precedes any federal constitutional issue," and that this Court "should abstain and let the state courts resolve this unsettled issue of state law." (*Id.* at PageID #1506.)

---

states … If Congress grants us jurisdiction, we're duty bound to exercise it absent some restriction in law or precedent."). Rather, Plaintiffs bring their state law claims pursuant to supplemental jurisdiction. (*See* Doc. No. 8 at PageID #279 ("Supplemental jurisdiction is proper over Plaintiffs' state claims pursuant to 28 U.S.C. 1367."). Because these state law claims are not brought under diversity jurisdiction, they would not be considered "coercive claim[s] over which the district court *must* exercise jurisdiction." *Fire-Dex*, 139 F.4th at 529 (emphasis added). This is because supplemental jurisdiction is discretionary, rather than mandatory. *See Miller v. Collins*, 2023 WL 7303305, at *4 (6th Cir. Nov. 6, 2023) ("Supplemental jurisdiction remains a 'doctrine of discretion, not a plaintiff's right.'"); *see also James v. Hampton*, 592 Fed. App'x. 449, 462 (6th Cir. 2015) ("A district court may decline to exercise supplemental jurisdiction, among other reasons, if the claim 'raises a novel or complex issue of State law.'"). Thus, the key evaluation is that of the § 1983 claims contained in Counts Two through Five.

[17] In their Motion to Dismiss, Defendants contend that the entire action should be dismissed under abstention doctrines, and specifically reference *Pullman* as an example. (Doc. No. 26 at PageID #1505.) In their Opposition to Plaintiffs' Motion for Preliminary Injunction, Defendants make the same argument except that they reference both *Pullman* and *Burford* as abstention doctrines. (Doc. No. 25 at PageID #1479–80.) Although Defendants do not explicitly reference *Burford* in their Motion to Dismiss, the Court finds that *Burford* is inapplicable for the same reasons as *Pullman*, as discussed *infra.*

In their Combined Response, Plaintiffs maintain that their § 1983 claims are "wholly independent and valid regardless of whether a court determines that [Chapter 365] applies to Plaintiffs." (Doc. No. 30 at PageID #1550.)  According to Plaintiffs, they "were already forced to comply fully or begin complying thereby sustaining damages" which independently supports their § 1983 claims.[18]  (*Id.*)  Thus, Plaintiffs appear to argue that it is not necessary for the Court to resolve the issue of whether they are "owners" under the ordinance to reach the § 1983 claims because the ordinance has *already* been applied to them, and that such application has already caused damages independently sufficient to support a § 1983 claim.  (*See generally id.* at PageID #1550–51, 1558.) Plaintiffs also assert that "not one of the ordinances at issue is ambiguous." (*Id.* at PageID #1557.)

In their Reply, Defendants reiterate that if Plaintiffs were correct that Chapter 365 does not apply to them, the "definitive ruling on [that] state issue would terminate the controversy." (Doc. No. 31 at PageID #1577–78.)  Defendants thus contend that "Plaintiffs' purported questions of constitutionality are easily avoidable" and that "*Pullman* abstention applies." (*Id.* at PageID #1578.)

"The doctrine of abstention, under which a [d]istrict [c]ourt may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a [d]istrict [c]ourt to adjudicate a controversy properly before it." *Jones v. Coleman*, 848 F.3d 744, 749 (6th Cir. 2017). "One exception to this general rule is based on the avoidance of 'needless friction with state policies,' and 'a premature constitutional adjudication.'" *Id.* (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)). "*Pullman* abstention, as this exception has come to be called, does not 'involve the abdication of federal jurisdiction, but only the postponement of its

---

[18] For example, Plaintiffs indicate that Defendants sent them a letter requiring them to comply with the ordinance or face penalties.  (Doc. No. 30 at PageID #1551.)

exercise,' which differentiates it from other forms of federal judicial abstention." *Id.* (citation omitted).

The *Pullman* abstention doctrine instructs that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Id.* at 749–50.  For example, *Pullman* abstention may apply where the "state-law question is an unsettled issue best decided by state courts." *Id.* at 750.  The Supreme Court has illustrated considerations for determining when a district court should abstain under *Pullman*:

> "Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim, we have regularly ordered abstention. Similarly, when the state-law questions have concerned matters peculiarly within the province of the local courts, we have inclined toward abstention. On the other hand, where the litigation has already been long delayed, or where it has seemed unlikely that resolution of the state-law question would significantly affect the federal claim, the Court has held that abstention should not be required."

*Id.* (citing *Harris Cty. Comm'rs Court v. Moore*, 420 U.S. 77, 83–84 (1975)).

The Court finds Plaintiffs' argument well-taken.  In their Complaint, Plaintiffs allege that "Defendants have enforced and continue to enforce [Chapter 365] against [Plaintiffs] under threat of assessment of fines, criminal prosecution and other penalties under the law."  (Doc. No. 9 at PageID #288.)  Plaintiffs further allege that they "have been harmed and continue to be harmed by Defendants unlawful enforcement of [Chapter 365] …."  (*Id.*)  Given that Plaintiffs allege that Chapter 365 has *already* been enforced against them and has caused them harm—an allegation that is entitled to truth at this stage[19]—that past enforcement could theoretically support a § 1983 claim even if Chapter 365 is ultimately found not to apply to Plaintiffs because they are not "owners" under the statute.  In other

---

[19] *See Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

words, even if Plaintiffs are not "owners" under the ordinance (which may preclude application of the ordinance against Plaintiffs in the future), that would not negate the alleged harm that occurred from any *previous* enforcement of Chapter 365 against them.[20]  Thus, regardless of whether Plaintiffs are considered "owners" under the ordinance, the Court would still have to evaluate the merits of Plaintiffs' § 1983 claims based on the allegations of past enforcement and associated harm.

For this reason, the Court concludes that the "unsettled issue of state law" as Defendants frame it—namely, whether Plaintiffs are considered "owners" under Chapter 365—is not a "difficult and unsettled question[] of state law[21] [that] *must* be resolved *before a substantial federal constitutional question can be decided*."  *Jones*, 848 F.3d at 750 (emphasis added).  Accordingly, the Court will proceed to the merits of Plaintiffs' § 1983 claims.

### b)  Merits of Federal Coercive Claims (Counts Two through Five)

The Court next turns to Defendants' 12(b)(6) arguments as to Plaintiffs' § 1983 claims—i.e., Counts Two through Five.  (*See* Doc. No. 8 at PageID #295–300.)  Specifically, Plaintiffs assert four § 1983 claims alleging "Violations of Equal Protection and Due Process under the U.S. Constitution,

---

[20] *See, e.g.*, *John and Jane Doe No.1 v. Bethel Local School District Bd. of Ed.*, 2025 WL 2453836, at *5 (6th Cir. Aug. 26, 2025) ("Plaintiffs' claims for damages under 42 U.S.C. § 1983, however, are not moot.  Generally, claims for damages survive mootness challenges because they 'are retrospective in nature' … [B]ecause plaintiffs request damages for a past constitutional violation, the School District's 'change in conduct will not moot the case.'").  In other words, while the determination of whether Plaintiffs are "owners" under the ordinance might precede an analysis of the constitutionality of the ordinance with respect to *future* application, it would not precede an evaluation of Plaintiffs' § 1983 claims that seek damages from alleged harm due to a *past* constitutional violation because Plaintiffs claim that the allegedly unconstitutional ordinance was already applied to them.

[21] To be clear, this holding should not be construed as a finding that the legal issue raised by Defendants is not a "difficult and unsettled question[] of state law."  *Jones*, 848 F.3d at 750.  Rather, the Court merely concludes that said legal issue is not one that "*must* be resolved" before Plaintiffs' § 1983 claims can be addressed, as the Court would still have to reach the merits of Plaintiffs' § 1983 claims regardless of how this state law issue is resolved.  *Id.* (emphasis added).

Amendment XIV."[22] (*See id.*) The Court will evaluate Plaintiffs' equal protection and due process claims separately, below.

### (1) Equal Protection Claims

The Court first begins with Plaintiffs' equal protection claims. (*See* Doc. No. 8 at PageID #295–300.)

In their Motion, Defendants argue that Plaintiffs make conclusory allegations that Defendants "violated their 'equal protection … rights under' the Fourteenth Amendment." (Doc. No. 26 at PageID #1506.) Defendants contend that Plaintiffs fail to plead "sufficiently plausible allegations about similarly situated persons" and thus "fail[] to state a viable claim." (*Id.* at PageID #1508.) Specifically, Defendants assert that Plaintiffs "did not state a sufficient factual basis for this Court to conclude that [they] were treated differently from another who is similarly situated [in] all material respects."[23] (*Id.* at PageID #1509.) Finally, Defendants contend that Plaintiffs' equal protection claims are subject to rational basis review, and that Plaintiffs failed their "heavy burden" of "either negating every conceivable reason for the government's actions or … demonstrating that the actions were motivated by animus or ill-will." (*Id.* at PageID #1507.)

---

[22] In addition to their equal protection and due process challenges under the U.S. constitution, Plaintiffs also bring challenges under "42 U.S.C. § 1983" for "Violations of Ohio Constitution, Article I, § 1, § 2 and § 16." (*See* Doc. No. 8 at PageID #295–300.) However, it is well established that "Section 1983 does not provide a remedy for violations of state law. Rather, the statute's reach is limited to deprivations of federal statutory and constitutional rights." *Bojicic v. DeWine*, 569 F. Supp.3d 669, 693 (N.D. Ohio 2021) (citing *Neinast v. Bd. of Trs. of the Columbus Metro. Library*, 346 F.3d 585, 597 (6th Cir. 2003) (internal quotation marks omitted); *see also McCarthy v. City of Cleveland*, 626 F.3d 280, 283 n.1 (6th Cir. 2010) ("The violation of a provision of state law is not cognizable under § 1983."). To the extent Plaintiffs seek relief under § 1983 for violations of Ohio law, those claims are dismissed.

[23] Defendants assert various arguments as to why each category of individuals in Counts Two through Five (referenced in Chapter 365) are not similarly situated to Plaintiffs. (*See generally* Doc. No. 26 at PageID #1508–09.)

In their Combined Response, Plaintiffs do not substantively respond to Defendants' arguments that Plaintiffs did not plead "sufficiently plausible allegations about similarly situated persons." (*See* Doc. No. 30 at PageID #1560–63.)  Nor do Plaintiffs address Defendants' rational basis arguments.  (*See id.*)  Instead, Plaintiffs simply reiterate the allegations contained in the Complaint under each count.  (*See id.* at PageID #1560–61.)  Plaintiffs then assert that Defendants "attempt to impose a non-existent higher criteria … at the pleading [stage]" and contend that Defendants' 12(b)(6) arguments are "nothing more than Defendants [sic] opinions, conjecture and a categorization of landlords that ironically contradicts the entire alleged intent behind the Predatory Landlord Legislation." (*Id.* at PageID #1563.)

In their Reply, Defendants argue that "[f]ormulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief."  (Doc. No. 31 at PageID #1578.)  Defendants also assert that Plaintiffs do not address any of the arguments raised as to the equal protection claims, including the similarly situated and rational basis arguments, and that Plaintiffs have thus abandoned the claims by failing to address them in response to Defendants' dispositive motion.  (*Id.* at PageID #1578, 1580.)

"The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010); *see also Speed Way Transportation, LLC v. City of Gahanna, Ohio*, 2023 WL 2293099, at *4 (6th Cir. Mar. 1, 2023) (citing *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such

23

disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").  "[I]n the context of a civil rights claim, … conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim."  *Speed Way*, 2023 WL 2293099, at *4 (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008)).

As a preliminary matter, the Court finds that Plaintiffs' Complaint implicates the third theory under the equal protection clause.  Plaintiffs do not allege that they are a part of any suspect class.  (*See* Doc. No. 8 at PageID #295–300; Doc. No. 30 at PageID #1560–63.)  Nor do Plaintiffs argue that the burdening of any fundamental right implicates strict scrutiny.[24]  (*See id.*)  Moreover, in their Motion to Dismiss, Defendants explicitly argue that rational basis review applies as Plaintiffs "did not plead an interference with a fundamental … right" and that "there is no suspect class … [because] landlords are not a protected class."  (Doc. No. 26 at PageID #1499, 1508, 1510.)  Plaintiffs do not respond to any of these arguments—indeed, the words "fundamental," "suspect," "rational basis," or "strict scrutiny" do not appear anywhere in either Plaintiffs' Complaint or their Combined Response.  (*See generally* Doc. Nos. 8, 30.)  Plaintiffs have thus waived any opposition to Defendants' arguments on these points.  *See Fox v. Kia America, Inc.*, 726 F. Supp.3d 765, 785–86 (N.D. Ohio 2024) (citing cases).

---

[24] The only rights referenced in relation to Plaintiffs' equal protection claims is the conclusory allegation under each of Counts Two through Five that "Defendants' actions are in violation of Plaintiffs' equal protection and due process rights under the U.S. Const., amend. XIV as well as Plaintiffs' rights pursuant to Ohio Const., art. I, § 1, § 2, and § 16."  (*See* Doc. No. 8 at PageID #295–300.)  Moreover, while Plaintiffs reference various constitutional provisions under Count One of their declaratory judgment claim, the Court does not find those applicable here for four reasons: (1) Plaintiffs' Complaint does not indicate that any of those referenced provisions are tied to their equal protection claims; (2) Plaintiffs' recitation of such constitutional provisions constitute "formulaic and conclusory recitations" that are insufficient to state a plausible claim for relief; (3) Plaintiffs have not pled or demonstrated that any rights are "fundamental" rights as necessary for an equal protection claim; and (4) Defendants explicitly raised this argument in its Motion to Dismiss and Plaintiffs did not address it, thereby waiving any opposition thereto.

Accordingly, the Court evaluates Plaintiffs' equal protection claims under the "class of one" theory "where the plaintiff alleges that the state treated the plaintiff differently from others similarly situated and that there is no rational basis for such difference in treatment." *Andrews v. City of Mentor, Ohio*, 11 F.4th 462, 473 (6th Cir. 2021); *see also Long v. Village of Port Jefferson*, 2025 WL 1080802, at *6 (S.D. Ohio Apr. 10, 2025) (evaluating equal protection claim under "class of one" theory because "Plaintiff makes no allegations that they were targeted because of membership in a suspect class and does not directly state that any of their actions were fundamental rights").

To plead an equal protection claim under a "class of one" theory, a plaintiff must "allege[] that: (1) he or she has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment."[25] *U.S. v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (internal quotation marks omitted).  As explained previously, "conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim." *Speed Way*, 2023 WL 2293099, at *4.

With respect to the first element, a plaintiff "must allege that it and other individuals who were treated differently were similarly situated in all material respects." *Bojicic v. DeWine*, 569 F. Supp.3d 669, 688 (N.D. Ohio 2021) (citing *Superior Commc'ns v. City of Riverview*, 881 F.3d 432, 446 (6th Cir. 2018)) (internal quotation marks omitted); *see also Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) (requiring plaintiffs to plead that comparator "was similarly situated in all relevant respects").  In this regard, courts frequently find that conclusory

---

[25] Regarding this second element, a "plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negat[ing] every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Andrews*, 11 F.4th at 476.

allegations of being "similarly situated" are insufficient to survive a motion to dismiss.[26]  Contrarily, equal protection claims that survive 12(b)(6) challenges generally include factual allegations providing a basis to conclude that the plaintiff is "similarly situated."[27]

---

[26] *See, e.g., Rondigo, L.L.C.*, 641 F.3d at 684 ("In short, plaintiffs' allegations that Minard is similarly situated … are exposed as little more than 'legal conclusions couched as factual allegations' and need not be accepted as true under Rule 12(b)(6) scrutiny … By accepting these legal conclusions as sufficient, the district court failed to heed the teaching of *Iqbal* ….") (citation omitted); *L.O.I. Property, LLC v. Butler County*, 2022 WL 426097, at *12 (S.D. Ohio Feb. 12, 2022) ("Plaintiffs, however, do not include any *specific factual allegations* that they were similarly situated with others for purposes of their equal protection claim. Rather, plaintiffs allege, in a conclusory fashion, that, '[u]pon information and belief, the other property owners … were similarly situated in all material respects.'") (emphasis added); *BFC Enterprises, LLC v. City of Murray, Ky.*, 2018 WL 1457223, at *3–4 (W.D. Ky. Mar. 22, 2018) ("Still, BFC fails to explain how it is similarly situated to the other businesses or citizens of Murray … Although BFC mentions in its Response that it was treated differently than other businesses and citizens in Murray, it still fails to explain how they are similarly situated … [T]he Court cannot reasonably draw the inference that Murray is liable for an Equal Protection violation when BFC has not plead facts illustrating that it is similarly situated to other businesses in Murray that do not sell alcohol.") (citing similar cases); *Gracey General Partnership v. City of Clarksville, Tennessee*, 2025 WL 73249, at *12 (finding that the "plaintiff's sole factual contention about similarly situated applicants … fails to nudge the claim across the plausibility line" because it does "not say anything about who those owners are or *in what way they were similarly situated*") (emphasis added); *Bojicic*, 569 F. Supp.3d at 688–89 ("Plaintiffs have failed to allege any facts that would show that the essential businesses that Ohio allowed to remain open were similarly situated to their dance studios … It is plaintiffs' burden to plead facts that would allow me to find that defendants treated them unequally to similarly situated business owners … [Plaintiffs] have failed adequately to plead [sic] the essential equal protection element that Director Acton's orders treated similarly situated businesses more favorably than plaintiffs' dance studios."); *Napolitano*, 648 F.3d at 379–80 (finding that complaint failed to plausibly allege that similarly situated organizations and individuals were treated differently and that "plaintiffs fail[ed] to make any comparison to similarly situated groups …."); *Tri-Corp Management Co. v. Praznik*, 33 Fed. App'x. 742, 746 (6th Cir. 2002) (similar); *Clark v. Adams*, 2022 WL 2301952, at *16 (W.D. Mich. June 27, 2022) ("Plaintiff's equal protection claims are wholly conclusory. He fails to allege any facts to demonstrate that his fellow inmates were similarly situated in all relevant respects."); *Menefee v. Mason*, 2023 WL 3098651, at *2 (E.D. Mich. Apr. 26, 2023) ("Plaintiff's equal protection claim fails because he has not alleged with any specificity how he was treated differently from others who are similarly situated … Conclusory allegations of unconstitutional conduct are insufficient to state a claim under § 1983."); *Nosse v. City of Ann Arbor, Michigan*, 2023 WL 2250621, at *9 (E.D. Mich. Feb. 27, 2023) (finding that allegations that "[p]laintiff was treated differently than similarly situated owners of 'owner-occupied' 'single-family' 'dwellings' in Ann Arbor" constituted "threadbare allegations [that] fall short of the required factual pleadings to state a claim, as *Iqbal* and *Twombly* require"); *Stevens v. Elsman*, 2025 WL 1084173, at *4 (W.D. Mich. Mar. 17, 2025) ("Plaintiff's allegations are simply too conclusory to show that they [other individuals] were similarly situated to Plaintiff.").

[27] *See, e.g., Andrews*, 11 F.4th at 474 (finding allegations were "sufficient to satisfy the 'similarly situated' requirement for a class-of-one claim at the pleading stage" where plaintiff pled that: (i) "both its property and the Woodlands of Mentor each consist of approximately sixteen acres of land and that the Trust planned to use the land for the development of a materially similar number of residential units—[forty versus thirty-seven]—leaving a five acres of open space [sic]"; (ii) "[b]oth proposed developments … would have two access points to public roads and fit the maximum density requirements for RVG-zoned property"; and (iii) "the plats for both developments are 'materially identical' and were prepared by the same engineering firm"); *id.* at 476 (finding that these detailed allegations constituted "plausible allegations that [the] property is similarly situated to the Woodlands of Mentor"); *Speed Way*, 2023 WL 2293099, at *5 (finding that "Plaintiffs adequately allege[d] that they were similarly situated to the two comparator firms that ultimately received the bids" where the plaintiffs attached exhibits to their complaint showing, with multiple examples, that their "quoted prices were comparable to—and in some cases less than—the prices quoted by the comparators").

This distinction is illustrated in the case of *Mindale Farms Co. v. City of Tallmadge*, 2024 WL 1209906 (N.D. Ohio March 20, 2024).  In *Mindale*, the plaintiff alleged an equal protection claim, and the defendant filed a motion for judgment on the pleadings.  *Id.* at *3.  In evaluating the "similarly situated" element, the court explained that while a plaintiff need not "allege every fact relevant to whether the cited comparators are similarly situated in all relevant respects[,] … that does not render similarity toothless at the pleading stage."  *Id.*  Rather, "the alleged similarities must still be sufficient to move a conclusion of 'relevant similarity' from the realm of the possible to the realm of the plausible."  *Id.*  In other words, the court found that it was "not enough to plead some small number of similarities that are 'merely consistent with' two properties being similarly situated," but that "the alleged similarities must be enough for a court to infer that the two properties are in fact similarly situated."  *Id.*  The court found that the alleged "two generic similarities [that] sa[id] little about the two properties' characteristics … [did] not show that similarity between the two properties [was] plausible as opposed to merely possible."  *Id.*  Thus, the court granted the defendant's motion, but permitted the plaintiff to file a motion for leave to amend to address the identified deficiencies. *Id.*

Thereafter, the plaintiff filed a motion for leave to amend with an attached proposed amended complaint, and the court evaluated whether the amended complaint cured the deficiencies.  *See Mindale Farms Co. v. City of Tallmadge, Ohio*, 2025 WL 580968, at *2 (N.D. Ohio Feb. 21, 2025). With respect to the "similarly situated" element of the plaintiff's equal protection claim, the proposed amended complaint included more detailed allegations.  *Id.* at *3.  For instance, the proposed amended complaint pled that the two properties were "geographically and topographically similar,"

"included similar lot sizes, similar distances between homes, and similar frontages," and that "both projects ha[d] similar non-detrimental effects on the health, safety, and welfare of the community, including impact on traffic and wetlands." *Id.* With these new detailed allegations, the court concluded that the "proposed amended complaint sufficiently allege[d] facts which, if true, demonstrate Mindale Farms is similarly situated to Ripley Farms." *Id.*

Having set forth the above principles, the Court turns to Plaintiffs' Complaint and concludes that Plaintiffs have failed to plausibly allege the "similarly situated" element of their equal protection claims. Under Counts Two through Five of the Complaint, Plaintiffs include one conclusory paragraph per claim as follows:

> "Defendants unlawfully treat two groups of similarly situated property owners who have non-owner occupied residential units in the City of Cleveland differently by allowing for the waiver of the rental registration fee for government owned non-owner occupied residential units but not for privately owned non-owner occupied residential units."

> "Defendants unlawfully treat two groups of similarly situated property owners who have non-owner occupied residential units in the City of Cleveland differently by waiving the local agent in charge requirement for individuals who reside in Cuyahoga County or a contiguous county but forcing entities who are located in Cuyahoga County or a contiguous county to register a local agent in charge."

> "Defendants unlawfully treat two groups of similarly situated property owners who own non-owner occupied rental units in the City of Cleveland differently by only requiring property owners who own non-owner occupied rental units with four or more residential units in a building to comply with Cleveland Cod. Ord. 365.02(d)(1) while waiving the requirement for property owners who own non-owner occupied rental units in a building with three or less rental units."

> "Defendants unlawfully treat two groups of similarly situated property owners who own non-owner occupied residential units in the City of Cleveland differently by only requiring non-owner occupied residential rental properties with four or more residential units to comply with Cleveland Cod. Ord. 365.02(d)(2) while waiving the requirement for property owners who own non-owner occupied rental units in a building with three or less units."

(Doc. No. 8 at PageID #296–300.)

28

Aside from the wholly conclusory allegations that each of the two groups of property owners are "similarly situated," Plaintiffs provide no allegations, explanations, or factual basis for this Court to plausibly reach that conclusion.  Indeed, Plaintiffs' equal protection claim is even less plausible than that at issue in *Mindale*, where the plaintiff alleged "two generic similarities" relating to the "similarly situated" element that were still found to fall short of pleading requirements.[28]  Here, Plaintiffs allege *no* facts permitting this Court to reach the conclusion that Plaintiffs are "similarly situated" to their alleged comparators.

While the Court recognizes that this element does "not demand exact correlation, but [] instead seek[s] *relevant* similarity," Plaintiffs must still allege similarities "sufficient to move a conclusion of 'relevant similarity' from the realm of the possible to the realm of the plausible." *Mindale*, 2024 WL 1209906, at *3; *see also Rondigo, L.L.C.*, 641 F.3d at 682 (requiring plaintiffs to plead that they are "similarly situated in all relevant respects" at motion to dismiss stage).  They have failed to do so here.  Plaintiffs' Complaint contains precisely the type of "threadbare allegations [that] fall short of the required factual pleadings to state a claim, as *Iqbal* and *Twombly* require." *Nosse v. City of Ann Arbor, Michigan*, 2023 WL 2250621, at *9 (E.D. Mich. Feb. 27, 2023).

Moreover, Defendants explicitly raised this issue in their Motion to Dismiss, arguing that Plaintiffs "did not state a sufficient factual basis for this Court to conclude that these Plaintiffs were treated differently from another who is similarly situated [in] all material respects."  (Doc. No. 26 at PageID #1508–09) (emphasis added).  Defendants further advanced various arguments as to why these different groups are *not* similarly situated in all material respects.[29]  Yet, in their Combined

---

[28] *See Mindale*, 2024 WL 1209906, at *3.

[29] (*See, e.g.*, Doc. No. 26 at PageID #1509 ("Individuals who are local do not need a local agent in charge, because they can easily be their own individual point of contact."); *id.* ("[T]hose who own multiple units within one building are not

29

Response, Plaintiffs do not address any of Defendants arguments aside from asserting that they are "nothing more than Defendants opinions, conjectures and a categorization of landlords that ironically contradicts the entire alleged intent behind the Predatory Landlord Legislation."[30] (Doc. No. 30 at PageID #1563.) More importantly, Plaintiffs offer *no* explanation of their own as to how their Complaint plausibly alleges the "similarly situated" element beyond the sole conclusory allegation in which it is pled. (*See generally* Doc. No. 30.) Although Plaintiffs contend that "Defendants attempt to impose a non-existent higher criteria upon Plaintiffs at the pleading [stage] of the proceedings," they are mistaken—for even at the pleading stage, Plaintiffs must still "allege[] sufficient factual content to enable the Court to conclude that the complaint states a plausible claim for equal protection," which includes non-conclusory "allegations that they were similarly situated with others." *L.O.I. Property, LLC v. Butler County*, 2022 WL 426097, at *12 (S.D. Ohio Feb. 12, 2022).

The Court therefore concludes that the allegations in Plaintiffs' Complaint as to the "similarly situated" element of their equal protection claims "amount to conclusory and unadorned assertions that … are not entitled to a presumption of truth at this stage in the litigation." *Napolitano*, 648 F.3d at 379. Accordingly, in the absence of any plausible allegation of being "similarly situated,"

---

similarly situated from those who only own a few rental units."); *id.* ("Plaintiffs are for-profit business entities that are easily distinguishable from individuals or government agencies who do not operate in the same exact line of business."); *id.* ("Individuals are natural persons, not a creation of the state.").)

[30] The Court further finds that Plaintiffs' failure to respond to Defendants' arguments constitutes a waiver of opposition on these points. *See Fox*, 726 F. Supp.3d at 785–86 (citing cases). Even setting aside Defendants' arguments, however, the fact remains that *Plaintiffs* bear the burden of plausibly alleging their claims at this stage. Thus, even if Defendants had not asserted these particular arguments to which Plaintiffs have waived opposition, the Court would reach the same conclusion that Plaintiffs' Complaint is deficient.

Plaintiffs' equal protection claims fail to state a plausible claim for relief and must be dismissed.[31]

*See Rondigo, L.L.C.*, 641 F.3d at 684.

### (2)     Due Process

The Court next turns to Plaintiffs' due process claims.

In their Motion, Defendants argue that Plaintiffs have failed to plead a plausible due process § 1983 claim.  (Doc. No. 25 at PageID #1509.)  Specifically, Defendants contend that Plaintiffs have failed to plausibly allege a "fundamental right or constitutionally protected liberty interest[] that [has] been impacted by the City's actions."  (*Id.* at PageID #1510.)  Defendants reference various "rights" that Plaintiffs allege in relation to their declaratory judgment claim,[32] but assert that "[n]one of Plaintiffs' factual allegations implicate the specific types of fundamental rights that could form a basis for a substantive due process claim."  (*Id.*)  Defendants also argue that Plaintiffs have failed to "plead[] … the inadequacy of state or administrative processes and remedies to redress [their] due process violations," including raising these issues in an administrative proceeding under § 365.02(e) or in any civil, criminal, or eviction hearings.  (*Id.* at PageID #1511.)

In their Combined Response, Plaintiffs' response is the same as with their equal protection claims—namely, that they have "set forth the elements required to sufficiently plead [§ 1983] claims

---

[31] Because the Court finds that Plaintiffs' Complaint fails the first element of their "class of one" equal protection claims, it need not proceed to the second element of whether a rational basis existed for Plaintiffs' alleged differing treatment. *See Braun v. Ann Arbor Charter Tp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("[W]e need not apply the rational basis test because the plaintiffs have failed to demonstrate the existence of any similarly situated landowners."), *overruled on other grounds by Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180 (2019); *Silver v. Franklin Tp. Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) ("[W]e need not even go so far as to apply the rational basis test because Silver has failed to demonstrate that the Board treated him differently from similarly-situated individuals."), *overruled on other grounds by Knick*, 588 U.S. 180.

[32] This includes the "right to remain silent," "Plaintiffs' free will," "restrictions and/or contingencies on Plaintiffs' properties," and "irrelevant and unnecessary documentation." (Doc. No. 26 at PageID #1510.)  Importantly, as discussed *infra*, none of these rights are referenced in Plaintiffs' Complaint in relation to their § 1983 claims.  (*See* Doc. No. 8 at PageID #295–300.)

31

….” (Doc. No. 30 at PageID #1562.)  Aside from repeating the four allegations related to the similarly situated analysis referenced above,[33] Plaintiffs do not respond to Defendants' arguments regarding the failure to plead a "constitutionally protected property or liberty interest … [of which Plaintiffs have] been deprived through arbitrary and capricious action."  (*Id.* at PageID #1560–63; Doc. No. 26 at PageID #1509.)  Plaintiffs do not point to any specific "fundamental right" as the basis for their due process claim.  (*See* Doc. No. 30 at PageID #1560–63.)

In their Reply, Defendants reiterate that "Plaintiffs do not specify any alleged property or liberty interest or fundamental right for purposes of procedural due process in their [Complaint], or that any 'state action' was 'arbitrary and capricious.'"  (Doc. No. 31 at PageID #1581.)  Defendants reference Plaintiffs' argument made in relation to subject matter jurisdiction over their *declaratory judgment* claim—in which Plaintiffs assert that they "specifically identified over 10 separate violations of the U.S. Constitution"[34]—and contend that "[t]his is precisely the formulaic and conclusory recitation of the elements that the Supreme Court has held could not set forth a plausible claim for relief."  (*Id.* at PageID #1579.)  Defendants thus assert that Plaintiffs should be deemed to have abandoned their claim by failing to address it in response to Defendants' Motion.  (*Id.* at PageID #1578.)

The Fourteenth Amendment provides that '[n]o State shall … deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "Substantive due process, one component of these guarantees, limits 'governmental deprivations of life, liberty or property … regardless of the adequacy of the procedures employed.'"  *Clark v. Jackson*, 2023 WL

---

[33] *See supra* Section IV.A.2.b.1.

[34] (*See* Doc. No. 30 at PageID #1537.)

2787325, at *4 (6th Cir. Apr. 5, 2023). "To validly assert a substantive due process claim, a petitioner must provide a 'careful description' of the claimed liberty interest." *Clark v. Jackson*, 2023 WL 2787325, at *5 (6th Cir. Apr. 5, 2023). "This specificity requirement exists because substantive due process affords heightened protection for 'fundamental rights.'" *Id.* "If the claim involves a fundamental right, strict scrutiny applies," "[b]ut if the claim does not involve a fundamental right, only rational basis review applies." *Id.* A plaintiff may also assert a due process claim "when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." *Koenigs, L.L.C. v. City of Savannah, Tenn.*, 2019 WL 1186863, at *2 (W.D. Tenn. Mar. 13, 2019). "To adequately plead such a claim, [a] [p]laintiff must allege (1) a constitutionally protected property interest and (2) the deprivation of said interest through arbitrary and capricious action by the government." *Id.* (citing *Paterek v. Vill. of Armada*, 801 F.3d 630, 648 (6th Cir. 2015)).

Importantly, however, "[t]o establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest."[35] *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 Fed. App'x. 826, 834 (6th Cir. 2009). Courts have found that plaintiffs fail to state a plausible due process claim where the complaint "fails to identify which substantive right [was] allegedly violated and/or providing any supporting factual allegations with respect to [the] claim."[36] *City of Cincinnati v. Cheap Connections, LLC*, 2013 WL 4546465, at *3 (S.D. Ohio Aug. 28, 2013).

---

[35] While Plaintiffs do not specify whether they pursue a substantive or procedural due process claim, the distinction is immaterial because "insofar as Plaintiff[s] ha[ve] failed to assert a property or liberty interest for purposes of procedural due process, its substantive due process claims also fail." *Taylor Acquisitions*, 313 Fed. App'x. at 834.

[36] *See, e.g.*, *Cheap Connections, LLC*, 2013 WL 4546465, at *3 ("Cheap Connections conclusory allegations do not state a plausible substantive due process claim for relief against the City."); *Duncan v. Newby*, 2018 WL 627573, at *9 (W.D. Ky. Jan. 29, 2018) ("[W]hile Count II of Plaintiff's Complaint is entitled 'Violations of Procedural and Substantive Due Process Under 42 U.S.C. § 1983,' he provides no depth with respect to how he possessed a fundamental right, what that fundamental right was or is, or how governmental actions taken by Defendant shock the conscience, as required under

The Court finds that Plaintiffs' have failed to plausibly allege a due process claim.  Although Counts Two through Five are titled "Violations of Equal Protection and Due Process Under the U.S. Constitution," Plaintiffs do not include any allegations relevant to their due process claims aside from the conclusory allegations that "Defendants' actions are in violation of Plaintiffs' … due process rights under the U.S. Const., amend. XIV …."  (*See* Doc. No. 8 at PageID #296–300.)  Plaintiffs do not identify any particular "constitutionally-protected property or liberty interest" as related to these claims, nor do they explain why or how that interest is a "fundamental right," nor do they argue how any actions are "arbitrary and capricious."  (*See generally* Doc. No. 30 at PageID #1560–63.)  In fact, in the portion of their Combined Response addressing Defendants' 12(b)(6) Motion, Plaintiffs do not even reference their sole (conclusory) allegation related to their due process claim, but instead focus solely on the "similarly situated" allegations relevant to the equal protection claims discussed *supra*.  (*Id.* at PageID #1560–61.)  Plaintiffs have thus failed to allege the "existence of a constitutionally-protected property or liberty interest" with sufficient plausibility to support a due process claim.[37]

_____

the substantive due process clause … In short, Plaintiff provides no facts aimed at this clause, does not elaborate in any way on this claim, and it therefore must be dismissed for this independent reason as well.").

[37] Finally, the Court turns to Defendants' reference to the various constitutional provisions regurgitated under Count One of the Complaint in relation to Plaintiffs' declaratory judgment claim, and Defendants' discussion relevant thereto.  (Doc. No. 26 at PageID #1510.)  The Court finds that those portions of Plaintiffs' Complaint do not salvage Plaintiffs' claims for a multitude of reasons.  First, Count One only relates to Plaintiffs' claim for declaratory judgment, and Counts Two through Five of Plaintiffs' Complaint do not indicate that any of those rights serve as the basis for their § 1983 claims. (Doc. No. 8 at PageID #295–300.)  Second, Plaintiffs, in their Combined Response, do not point to any of those rights as the basis for their § 1983 claims despite Defendants' explicit argument that Plaintiffs had failed to "plausibly allege fundamental rights or constitutionally protected liberty interests."  (Doc. No. 30 at PageID #1560–63; Doc. No. 26 at PageID #1510.)  Third, even if this Court did read Plaintiffs' Complaint to reference those rights in relation to Plaintiffs' § 1983 claims, the Court concludes that the rights referenced under Count One constitute a formulaic and conclusory recitation that fails to set forth a plausible claim for relief for a due process claim.  (*See* Doc. No. 8 at PageID #290–93.)  Fourth, even if this Court did not find those rights to be conclusory, the Court finds that Plaintiffs—by failing to respond— waived any opposition to Defendants' arguments contained in their Motion to Dismiss as to why said rights do not "implicate the specific types of fundamental rights that could form a basis for a substantive due process claim."  (Doc. No. 26 at PageID #1510.)  Accordingly, the Court concludes that Plaintiffs' due process claims fail to state a plausible claim for relief.  *See also Central Mutual Insurance v. Niram Incorporated*, 2025 WL 296031, at *5 (N.D. Ohio Jan. 24, 2025) ("As the above authorities show, establishing the elements of a cause of action 'throughout' the Complaint is not sufficient to assert a claim on that basis.").

34

*Taylor Acquisitions, L.L.C.*, 313 Fed. App'x. at 834; *see also Duncan v. Newby*, 2018 WL 627573, at *9 (W.D. Ky. Jan. 29, 2018) ("Notably absent … is any reference to any substantive due process right Plaintiff allegedly possessed or which may have been violated.").

Moreover, Defendants, in their Motion to Dismiss, explicitly raise these arguments that "Plaintiffs did not plausibly allege fundamental rights or constitutionally protected liberty interests that have been impacted by the City's actions." (Doc. No. 26 at PageID #1510.) Plaintiffs do not address these arguments nor point the Court to the specific rights alleged that form the basis for their due process claims. (*See generally* Doc. No. 30 at PageID #1560–63.) Nor do Plaintiffs respond to Defendants' arguments that any due process claim, even if properly alleged, would be subject to "rational basis" review, or even attempt to address that standard or Defendants' assertions that the rational basis standard is met. (*See id.*) Plaintiffs have thus waived any opposition to Defendants' arguments on these points. *See Fox v. Kia America, Inc.*, 726 F. Supp.3d 765, 785–86 (N.D. Ohio 2024) (citing cases).

In short, Plaintiffs' due process claim is wholly conclusory and fails to satisfy the minimum standards under *Iqbal* and *Twombly* to set forth a plausible claim for relief. Moreover, Plaintiffs wholly fail to respond to Defendants' arguments for 12(b)(6) dismissal, thereby waiving opposition thereto. Accordingly, for the foregoing reasons, the Court hereby dismisses Plaintiffs' due process claims.

### c) Declaratory Judgment Claim (Count One)

The Court next turns to Plaintiffs' declaratory judgment claim.

---

35

First, the Court briefly addresses the effect of the above conclusions under *Fire-Dex*.  Because Plaintiffs' § 1983 claims have been dismissed, there are not any "coercive claim[s] over which the district court must[38] exercise jurisdiction [that] raise[] the same legal issue as the accompanying declaratory relief claim."[39]  *Fire-Dex*, 139 F.4th at 534.  Accordingly, the Court is not subject to the "severely constrain[ed]" standard set forth in *Fire-Dex*, and instead evaluates Plaintiffs' declaratory judgment claim under the more permissive discretionary standard.[40]  *Id.*

---

[38] Aside from Plaintiffs' declaratory judgment claim, the only remaining claims in this action are Plaintiffs' state law claims set forth in Counts Six through Eight. (*See* Doc. No. 8 at PageID #300–02.)  However, unlike in *Fire-Dex* where diversity jurisdiction was asserted, Plaintiffs here do not invoke diversity jurisdiction but rather bring their state law claims by way of supplemental jurisdiction. (*See id.* at PageID #279 ("Supplemental jurisdiction is proper over Plaintiffs' state claims pursuant to 28 U.S.C. § 1367."); Doc. No. 30 at PageID #1555–57.) Accordingly, Plaintiffs' state law claims are not claims that the Court *must* exercise jurisdiction over because the Court may (and, as explained *infra*, does) decline supplemental jurisdiction under 28 U.S.C. 1367(c).

[39] The Court thus finds it unnecessary to address Plaintiffs' arguments premised on the exercising of jurisdiction considering the existence of the § 1983 claims. (*See* Doc. No. 30 at PageID #1541.)  Plaintiffs also assert that this Court has independent jurisdiction over Count One under § 1331 and Plaintiffs need not address the *Grand Trunk* factors. The Court rejects this argument—it is well established that "whether to grant declaratory relief is discretionary." *Fire-Dex*, 139 F.4th at 527; *see also Heydon v. MediaOne of Southeast Michigan, Inc.*, 327 F.3d 466, 470 (6th Cir. 2003) ("The Declaratory Judgment Act does not create an independent basis for federal subject matter jurisdiction.").

[40] The Court pauses to address one small caveat.  In *Fire-Dex*, the Court indicated that where a "declaratory claim in a mixed action presents the same legal issue as the coercive claim over which the district court must *exercise jurisdiction*, these equitable considerations will counsel heavily in favor of not abstaining." 139 F.4th at 529 (emphasis added).  In the present case, the Court recognizes that it did technically "exercise jurisdiction" over Plaintiffs' § 1983 claims by not abstaining pursuant to a traditional abstention doctrine. *See* Section IV.A.2.a.  However, the Court does not find this scenario—namely, where jurisdiction is exercised over a mandatory claim, but the claim is subsequently dismissed under 12(b)(6)—to implicate the reduced discretionary standard of *Fire-Dex*.  The reason is straightforward.  In *Fire-Dex*, the Sixth Circuit discussed the situation where the "coercive claim and the declaratory claim hinge on the same substantive legal issue or issues." *Id.* at 528.  The Court reasoned that abstaining there would frustrate "the entire benefit derived from exercising discretion not to grant declaratory relief" because the coercive claim would require resolution of that issue and thus cause "duplicitous litigation." *Id.* at 529.  In other words, the "declaration of rights and responsibilities will usually be a logical 'prerequisite' to the award of damages. *Id.* at 528.  Here, however, the "mandatory claims" have since been dismissed, and thus will not require evaluation of the same issues required to evaluate the declaratory claim. And the resolution of the coercive claims did not "hinge on the same substantive legal issues or issues" as the declaratory claim because the coercive claims failed independently of those legal issues.  *Id.*  Thus, there is not a scenario where Plaintiffs' § 1983 "damages claims turn[] on the exact same legal issues as the declaratory claim[.]"  *Id.* at 533.

That said—*even* if the reduced discretionary standard did apply, the Court would nevertheless reach the same conclusion for the reasons mentioned above.  Recall that even where a coercive and declaratory claim are intertwined, the Court is not stripped of *all* discretion. *See supra* note 15.  Rather, circumstances may still exist where the exercise of such reduced discretion is appropriate.  In the present case—where all mandatory coercive claims have since been dismissed pursuant to 12(b)(6) (notwithstanding that jurisdiction was technically exercised)—the Court would find that declining to exercise

Under the Declaratory Judgment Act, litigants do not possess an absolute right to bring a lawsuit for declaratory judgment.  28 U.S.C. § 2201.  *See also AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)).  Instead, "[d]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* (quoting *Wilton*, 515 U.S. at 282).

The Sixth Circuit has enunciated a five-factor test (commonly referred to as the "*Grand Trunk* factors") that district courts must utilize to determine if jurisdiction is proper under § 2201:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Id.* at 785 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)); *see also, e.g., United Specialty Ins. Co. v. Cole's Place, Inc*., 936 F.3d 386, 396 (6th Cir. 2019).  Although the above formulation indicates that courts should balance the five factors, the Sixth Circuit has never indicated the relative weights of the factors. *See Cole's Place*, 936 F.3d at 396.  Instead, "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on facts of the case." *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014).  The Sixth Circuit has

---

jurisdiction over the declaratory claim would still be appropriate, even under limited discretion, for the reasons set forth above.

noted, in weighing these factors, "[d]istrict courts must be afforded substantial discretion to exercise jurisdiction 'in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and [the] fitness of the case for resolution, are peculiarly within their grasp.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (quoting *Wilton,* 515 U.S. at 289 (1995)).

In their briefing,[41] Defendants argue that the *Grand Trunk* factors weigh against exercising jurisdiction. (Doc. No. 25 at PageID #1469–79; Doc. No. 26 at PageID #1504–05.) In their Combined Response, Plaintiffs maintain that the *Grand Trunk* factors weigh in favor of exercising jurisdiction. (Doc. No. 30 at PageID #1543–54.)

The Court will address each *Grand Trunk* factor, below.

### (1)    Whether the Judgment Would Settle the Controversy

In their briefing, Defendants do not address this first factor in detail. Rather, Defendants simply indicate that pursuant to this Court's previous opinion in *Admiral Ins. Co. v. Fire-Dex*, 2022 WL 16552973 (N.D. Ohio Oct. 31, 2022) (Barker, J.), this Court should again "put very little weight into the first and second of the *Grand Trunk* factors." (Doc. No. 25 at PageID #1470.)

In their Combined Response, Plaintiffs argue that this Court should find that this factor weighs in favor of exercising jurisdiction. (Doc. No. 30 at PageID #1543–44.) Plaintiffs also contend that this case is distinguishable from *Admiral Ins.* and instead analogous to *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386 (6th Cir. 2019).

---

[41] Defendants originally challenged this Court's jurisdiction over Count One in its Opposition to Plaintiffs' Motion for Preliminary Injunction. (Doc. No. 25 at PageID #1469–79.) Defendants later reiterated these arguments in their Motion to Dismiss, referencing their discussions in the Motion for Preliminary Injunction. (Doc. No. 26 at PageID #1504–05.) Plaintiffs filed a Combined Response addressing the identical arguments. (Doc. No. 30.) For clarity, the Court will cite to Defendants' Opposition in its discussion of the *Grand Trunk* factors.

In *Admiral Ins.*, this Court evaluated the *Grand Trunk* factors and concluded that the judgment would settle the controversy. 2022 WL 16552973, at *4. However, this Court found that the first factor "should be afforded little weight in its overall analysis of the *Grand Trunk* factors." *Id.* at *5. This Court distinguished *Cole's Place*, a case where the "application of Kentucky law to the coverage issue [was] straightforward," on the basis that the "application of Ohio law to the instant coverage dispute [was] far from straightforward because no Ohio court has yet ruled on these issues." *Id.* Accordingly, this Court determined that the first factor was ultimately outweighed by federalism considerations. *Id.*

Here, the Court reaches the same conclusion. The Court finds that a declaratory judgment would settle the controversy between the parties.[42] However, as explained further below, the Court also concludes that the issues presented are "far from straightforward"—particularly given that no Ohio court has yet interpreted Chapter 365. *Id.* Thus, the Court gives little weight to this factor.

### (2) Whether the Declaratory Judgment Action Would Serve a Useful Purpose in Clarifying the Legal Relations at Issue

In their briefing, Defendants next argue that a declaration about federal issues is not useful in clarifying the legal relations at issue. (Doc. No. 25 at PageID #1472.) Specifically, Defendants contend that Plaintiffs believe that they "are not owners as defined by [§ 365.01(l)] and are therefore not required to comply with any obligation imposed upon owners in [Chapter 365]." (*Id.*) Thus, Defendants assert that "[i]f Plaintiffs were correct that they are not subject to [Chapter 365], there would be no reason to reach the federal issues that it raised in its Amended Complaint." (*Id.*)

---

[42] Defendants do not appear to argue otherwise. (*See generally* Doc. No. 25.)

In their Combined Response, Plaintiffs contend that a declaration would clarify the legal relations at issue because "Plaintiffs will suffer injury unless legal relations are clarified" by way of enforcement of the ordinance. (Doc. No. 30 at PageID #1546.)

Analysis of the second factor is closely tied to the first. *Flowers*, 513 F.3d at 557. "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.*

The Court finds Plaintiffs' arguments well-taken. Plaintiffs seek a declaratory judgment in numerous respects, including whether they are "owners" under the ordinance. The resolution of those issues will clarify the legal relations at issue. Indeed, Defendants themselves concede that this issue is the "central thrust" of Plaintiffs' argument. (Doc. No. 26 at PageID #1504.) Moreover, the Court is not persuaded by Defendants' argument. Plaintiffs seek a declaratory judgment on the interpretation of "owners" as well as the constitutionality of the ordinance. If the Court were to find Plaintiffs to be "owners," it would be appropriate to address the constitutionality of the ordinance because it would apply to Plaintiffs. Yet, if the Court found Plaintiffs not to be "owners," it could very well limit its declaratory ruling to that issue if, as Defendants contend, any further declaratory relief would be mooted by such a finding. Even in that scenario, however, there is no question that the declaratory judgment on the "owner" issue would clarify the legal relations between the parties here.

Accordingly, the Court finds that this factor weighs in favor of exercising jurisdiction. However, as with the first factor, the Court again finds that it is outweighed by federalism considerations.

### (3) Whether the Declaratory Judgment Action is Motivated by "Procedural Fencing"

In their briefing, Defendants next argue that Plaintiffs' request for a declaration is motivated by "procedural fencing." (Doc. No. 25 at PageID #1474.) Defendants assert that Plaintiffs are "invoking potential defenses in [an] attempt to transform traditional state-law claims into a federal case." (*Id.*) Defendants reference Plaintiffs' contention that they will be "irreparably harmed because the City may bring a civil or criminal action" against them for the failure to comply with Chapter 365. (*Id.* at PageID #1475.) Defendants maintain that Plaintiffs' defense to such enforcement will be the same issues addressed in the declaratory action—namely, that the ordinance does not apply to limited liability companies because they are not "owners," and that the ordinances are unconstitutional—and that Plaintiffs have "rush[ed] to obtain *res judicata*." (*Id.*)

In their Combined Response, Plaintiffs argue that Defendants present no evidence that they are engaged in "procedural fencing to provide an area for a race for *res judicata*." (Doc. No. 30 at PageID #1546.) Plaintiffs contend that Defendants' cited authority is distinguishable for various reasons including that they involved multiple pending lawsuits. (*Id.* at PageID #1547.) Next, Plaintiffs assert that "[i]f this Court grants declaratory relief, it is unclear as to what possible scenario that will exist that necessitates Plaintiffs invoking *res judicata* unless of course Defendants intend to defy an order issued by this Court." (*Id.*)

"'Procedural fencing' refers to 'a range of tactics that courts regard as unfair or unseemly,' including selecting a forum to start a race for res judicata." *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co.*, 29 F.4th 792, 797 (6th Cir. 2022) (quoting *Western World Ins. Co. v. Hoey*, 773 F.3d 755, 761 (6th Cir. 2014)). This factor "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to

have done so for the purpose of acquiring a favorable forum.'"  *Flowers*, 513 F.3d at 558 (quoting

*AmSouth Bank*, 386 F.3d at 788).  The important question is "whether the declaratory plaintiff has

filed in an attempt to get her choice of forum by filing first."  *AmSouth Bank*, 386 F.3d at 789.  The

Sixth Circuit has been hesitant to assign the plaintiff with an "improper motive . . . where there is no

evidence of such in the record."  *Flowers*, 513 F.3d at 558.  Additionally, when the declaratory

judgment action is filed after the state court action, the plaintiff generally receives the benefit of the

doubt that no improper motive exists.  *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d

807, 814 (6th Cir. 2004).

The Court finds that this third factor is neutral.  Plaintiffs indicate that they "routinely file[]

multiple eviction actions in the [Cleveland Housing Court] approximately every month" and

"anticipate[] that … eviction actions will need to be filed at some point during the pendency of this

action."  (Doc. No. 23 at PageID #1240.)  Plaintiffs further indicate that "Judge W. Mona Scott …

would not grant forcible entry and detainer (eviction) actions absent the landlord providing a current

rental registration" issued by Defendants.  (Doc. No. 8 at PageID #285.)  Thus, it appears to the Court

that state court actions were already pending in which the issue could have been addressed.  However,

Plaintiffs opted not to present the issue to the Cleveland Housing Court.[43]  Instead, Plaintiffs rushed

to federal court to obtain a declaratory judgment—*prior* to their state court hearings—that the

ordinance does not apply to them because they are not "owners."  And Plaintiffs' own briefing

---

[43] In their Combined Response, Plaintiffs assert that they could not present the issue to the Cleveland Housing Court because the "plaintiff in said lawsuits is AIY Properties, Inc., the property management company that manages Plaintiffs' properties" and not Plaintiffs themselves.  (Doc. No. 30 at PageID #1558.)  The Court rejects this argument.  Plaintiffs indicate in their Motion for Preliminary Injunction that "[Plaintiffs], by and through AIY Properties, Inc., routinely file[] multiple eviction actions in [Cleveland Housing Court]."  (Doc. No. 23 at PageID #1240.)  There is no reason why the argument could not be raised that Plaintiffs, as limited liability companies, do not fall within Chapter 365 in response to the Cleveland Housing Court requiring such registrations—particularly in an action where Plaintiffs' own properties are at issue.

suggests that this was done, in part, to avoid an unfavorable ruling from the Cleveland Housing Court.[44]

Nonetheless, the Court finds Plaintiffs' argument compelling that they need not wait for Defendants to enforce criminal proceedings against them.  Indeed, the Supreme Court has recognized the risk of "plac[ing] the hapless plaintiff between the Scylla of intentionally flouting state law and the Charybdis of forgoing what he believes to be constitutionally protected activity in order to avoid becoming enmeshed in a criminal proceeding."  *Steffel v. Thompson*, 415 U.S. 452, 462 (1974).  And Defendants' argument to the contrary is unpersuasive.  In their Reply, Defendants cite to Justice Stewart's concurrence in *Steffel* which cautioned against interpreting the decision as "authorizing the invocation of federal declaratory judgment jurisdiction by a person who thinks a state criminal law is unconstitutional."  *Id.* at 476 (Stewart, J.).  However, Justice Stewart's statement was made in the context of determining whether there was a "genuine threat of enforcement of a disputed state criminal statute"—i.e., ensuring that a federal declaratory judgment would not be sought as to the constitutionality of a state criminal law *unless* there was a genuine threat of enforcement.  *Id.*  Here, the concerns held by Justice Stewart are not implicated because Plaintiffs have alleged that Defendants "threatened and continue to threaten Plaintiffs" regarding their failure to comply with Chapter 365, thereby creating a genuine threat of enforcement.  (Doc. No. 8 at PageID #288; *see also* Doc. No. 23-14 at PageID #1402.)

---

[44] Specifically, Plaintiffs assert that had they raised the issue during a forcible entry and detainer action, "it would be extremely unlikely for a magistrate to rule on the issue from the bench," and that "[a]t worst, *judgment would be denied* and Plaintiffs would have to file an appeal to the Eighth District Court of Appeals."  (Doc. No. 30 at PageID #1559 (emphasis added).)  This highlights the problem.  Rather than present the issue to the Cleveland Housing Court and risk a denial, Plaintiffs instead rushed to federal court "for the purpose of acquiring a favorable forum."  *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank*, 386 F.3d at 788); *see also AmSouth Bank*, 386 F.3d at 788 ("[T]he federal declaratory judgment is not a prize to the winner of the race to the courthouse.").

Accordingly, given the competing considerations above, the Court concludes that this factor is neutral.

### (4) Whether the Use of a Declaratory Action Would Increase Friction Between Federal and State Courts and Improperly Encroach on State Jurisdiction

The Sixth Circuit has divided this factor into three sub-factors: (1) whether the underlying factual issues are important to an informed resolution of the case; (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action. *Flowers*, 513 F.3d at 560. The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id*. The second sub-factor asks "which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Id*. This factor weighs against an exercise of jurisdiction when there are "novel questions of state law." *Id*. The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Id.*

The Court will address each sub-factor, below.

### (a) First Sub-Factor

"The first subfactor 'focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action.'" *Cardinal Health*, 29 F.4th at 799 (quoting *Flowers*, 513 F.3d at 560).

44

The Court finds that this first sub-factor weighs slightly against exercising jurisdiction. The Sixth Circuit has recognized that "'comity is not so narrow' as to only be a concern when there is an ongoing parallel state court proceeding." *Admiral Ins.*, 2022 WL 16552973, at *7 (citing *Cardinal Health, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 29 F.4th 792, 799 (6th Cir. 2022)). Although the Court agrees with Plaintiffs that an "extensive evaluation of the factual issues" is not necessarily required to address the issue of whether Plaintiffs are an "owner"—as that issue primarily involves statutory interpretation—Plaintiffs raise numerous other constitutional challenges[45] in their declaratory judgment claim that involve more fact-intensive inquiries into the application of the ordinance. Accordingly, the Court finds that this first sub-factor weighs slightly against exercising jurisdiction.

### (b)     Second Sub-Factor

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. In *Flowers*, the Sixth Circuit indicated that consideration of this factor usually involves the question of whether novel issues of state law are raised in the declaratory action. *Id.* District courts need not turn away declaratory judgment actions when an undetermined question of state law is presented, but it is an appropriate consideration for district courts to weigh when deciding whether to exercise their discretion. *Cardinal Health*, 29 F.4th at 799 (citing *Flowers*, 513 F.3d at 560). Further, if the state law is clear and the state court is not considering the issues, this subfactor has less force. *Id.* However, where it is unclear how a state court would resolve an issue of state law, the Sixth Circuit has held that state

---

[45] Notably, many of these constitutional challenges arise under Ohio law. (*See* Doc. No. 8 at PageID #290–93.)

courts may be "more familiar and, therefore, better able to resolve" the issue.  *Bituminous*, 373 F.3d

at 815; *Cardinal Health*, 29 F.4th at 800.

The Court concludes that the second sub-factor weighs heavily against exercising jurisdiction.

The Predatory Landlord Legislation was passed on February 5, 2024, and Defendants began requiring

landlords to register their residential rental properties and pay rental registration fees online as of

2025.  (Doc. No. 8 at PageID #279, 288.)  The Court is not aware of any Ohio courts ruling on these

issues involving Chapter 365.  Moreover, the Court finds that it cannot easily predict how the Ohio

courts would rule on the issues presented in Plaintiffs' Complaint.[46]  Rather, the "states are in a better

position" to resolve these issues of first impression regarding the interpretation of Chapter 365.[47]

Thus, this second sub-factor weighs heavily against exercising jurisdiction.

---

[46] For example, Plaintiffs argue that a limited liability company is not an "owner" as defined in § 365.01(l)—a "person, partnership, or corporation that holds title to the residential rental unit."  (Doc. No. 8-2 at PageID #307.)  Notably, § 365.01 does not define "person," "partnership," or "corporation."  (*See id.*)  The Court first notes that "[u]nder Ohio law, a limited liability company ('LLC') is neither a corporation nor a partnership, as those concepts are commonly understood, but, instead, is a hybrid."  *Dexxon Digital Storage, Inc. v. Haenszel*, 832 N.E.2d 62, 69 (5th Dist. 2005).  However, Ohio courts have also applied Ohio statutes to LLCs even where they were not specifically listed because, "given that an LLC has some of the attributes of a corporation and some of a partnership, an LLC should be governed by the same rules that apply to those entities."  *Id.* at 69–70.  Further, the Ohio Revised Limited Liability Company Act defines a "person" to include, in relevant part, an "entity," and it further defines an "entity" to include, in relevant part, a "limited liability company" in addition to a "corporation" and various partnerships.  *See* O.R.C. § 1706.01(K), (U).  Moreover, this reading is not inconsistent with Chapter 365 because while § 365.01(l) defines an "owner" as a "person," § 365.02 utilizes the term "*natural* person"—implying that the term "person" in the definition of "owner" may not be limited to natural persons.  The Court takes no position on these competing interpretations, but instead sets them forth simply to demonstrate the novel issues presented in interpreting this ordinance as a matter of first impression.

[47] Indeed, even the federal constitutional issues raised by Plaintiffs' declaratory claim may hinge on novel state law interpretations of the ordinance.  For example, as related to the viability of state procedures, the parties have differing interpretations of the administrative procedures set forth in § 365.02(e).  Defendants assert that the provision applies any time the Director determines that a structure is "no longer in compliance with the requirements of this Code," while Plaintiffs maintain that the provision only applies when a Director "revoke[s] a certificate of non-owner-occupied residential Unit registration."  (Doc. No. 8-2 at PageID #308; Doc. No. 26 at PageID #1511; Doc. No. 30 at PageID #1551–52.)

(c)     **Third Sub-Factor**

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. Put another way, this sub-factor looks to whether "there is a close nexus between the legal issues and state public policy." *Admiral Ins.*, 2022 WL 16552973, at *9; *see, e.g.*, *W. World Ins. Co. Assoc., Inc. v. Amgad William Abdou, M.D.*, 2013 WL 12131308, at *6 (N.D. Ohio Aug. 7, 2013). Where "no federal laws are at issue," the third sub-factor "weighs against exercising jurisdiction." *Mass. Bay*, 759 Fed. App'x. at 440.

The Court finds that this factor weighs heavily against exercising jurisdiction. First, this action involves the interpretation and constitutionality of a municipal ordinance. Second, the issues presented unquestionably involve state public policy.[48]  Accordingly, the factor weighs heavily against exercising jurisdiction.[49]

After reviewing the three sub-factors, Chapter 365, Ohio statutes, and caselaw, it is clear to the Court that the use of a declaratory judgment would unnecessarily increase friction between the federal and state courts and improperly encroach on state jurisdiction by deciding unsettled issues of state law.  The Court thus concludes that the fourth factor weighs heavily against exercising jurisdiction.

---

[48] As noted in Plaintiffs' Complaint, the law has been presented as "pro tenant 'Residents First' legislation." (Doc. No. 8 at PageID #279; *see also* Doc. No. 23-4 at PageID #1358.) Regardless of the true intention behind the law—which is contested by the parties—there can be no true dispute that the legislation involves state public policy.

[49] In their Combined Response, Plaintiffs assert that Defendants' entire argument regarding this sub-factor relies on arguments that have been mooted by the dismissal of Cleveland Housing Court and Judge Scott. (Doc. No. 30 at PageID #1549.) It is true that Defendants discuss the Anti-Injunction Act in relation to this sub-factor, which is no longer relevant given that Judge Scott and Cleveland Housing Court have been dismissed. However, the Court still finds, independent of those arguments by Defendants, that there is a "close nexus between the legal issues and state public policy." *Admiral Ins.*, 2022 WL 16552973, at *9; *see supra* note 48.

(5)      **Whether an Alternative Remedy is Better or More Effective**

The final factor asks whether there are any alternative and better remedies available to Plaintiffs.  The Sixth Circuit has indicated that a district court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk*, 746 F.2d at 326.  A state declaratory judgment action and an indemnity action after the end of the state claim are both alternative remedies to a federal declaratory judgment action.  *See Bituminous*, 373 F.3d at 816; *Travelers*, 495 F.3d at 273.  However, an alternative remedy is not necessarily a better remedy. *Flowers*, 513 F.3d at 562 ("[I]t is not clear whether such alternative remedies are better or more effective than a federal declaratory action.").

The Court concludes that this factor weighs heavily against exercising jurisdiction.  There is an alternative remedy better than litigation in a federal court: a declaratory judgment action in an Ohio state court.  An Ohio declaratory judgment action is a superior remedy because it allows the parties to ask Ohio courts to adjudicate these novel state law issues in the first instance.  Moreover, this case involves primarily state issues of law, which weighs further against exercising federal jurisdiction here.  *See Cardinal Health*, 29 F.4th at 801.

Plaintiffs' arguments for why they "had no choice but to file in federal court" are misguided. In their Combined Response, Plaintiffs first assert that they were forced to file in federal court because even "[i]f they filed in state court, Plaintiffs would still have filed the federal action for the 42 U.S.C. 1983 claims," and "the case would be bifurcated."  (Doc. No. 30 at PageID #1549.)  However, Plaintiffs fail to appreciate that "state courts may hear constitutional claims arising under 42 U.S.C. § 1983." *Grey v. Morris*, 1996 WL 494996, at *3 (6th Cir. Aug. 29, 1996) (citing *Felder v. Casey*, 487 U.S. 131, 139 (1988)); *see also Mathes v. Gorcyca*, 2011 WL 3862361, at *3 (E.D. Mich. Sept.

48

1, 2011) ("Federal courts do not have exclusive jurisdiction over § 1983 actions; rather, federal courts and state courts have concurrent jurisdiction over § 1983 actions.").

In similar fashion, Plaintiffs argue that "[f]orcing Plaintiffs to file in state court eliminates over 10 of their basis [sic] for relief" because their declaratory claim "include[s] both state and federal claims …."  (Doc. No. 30 at PageID #1550.)  Again, this is incorrect—under Ohio Rev. Code § 2721.03, a plaintiff can seek a declaratory judgment from a state court that a municipal ordinance is in violation of federal law.  *See, e.g.*, *Moore v. Middletown*, 975 N.E.2d 977 (Ohio 2012) (permitting property owners to seek declaratory judgment from state court that city ordinances were "arbitrary, capricious, and unconstitutional and *violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution* and the Ohio Constitution") (emphasis added); *Couchot v. Ohio State Lottery Comm.*, 594 N.E.2d 42, 43 (10th Dist. 1991) ("Appellants' [declaratory judgment] claims are founded on provisions of both the Ohio and United States Constitutions."); *Tobacco Use Prevention & Control Found. Bd. of Trustees v. Boyce*, 925 N.E.2d 641, 648 (10th Dist. 2009) (seeking declaratory judgment in state court that "H.B. 544 is unconstitutional as violating the Contract Clause[] of Section 10, Article I of the United States Constitution …"); *see also Andreyko v. Cincinnati*, 791 N.E.2d 1025, 1029 (1st Dist. 2003) ("Ohio courts may adjudicate declaratory-judgment claims based on violations of Section 1983.").

In short, Plaintiffs could obtain the same requested relief by filing an action in the state trial court.  Plaintiffs could request the same TRO and preliminary injunction, pursue federal § 1983 claims,[50] and seek a declaratory judgment on issues of both state and federal law just as they seek

---

[50] *See also Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–78 (1981) ("The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication.").

here. Most importantly, however, is that filing in state court "has the advantage of allowing the state court to apply its own law"—particularly relevant here where Plaintiffs' case involves novel issues and interpretations of state law and ordinances. *Cardinal Health*, 29 F.4th at 801. Accordingly, the Court finds that this factor weighs heavily against exercising jurisdiction.

### (6)    Weighing the Factors

The Sixth Circuit has not indicated how district courts should weigh the five *Grand Trunk* factors when deciding whether to exercise jurisdiction over a declaratory judgment action. *Id.* Instead, the relative weight of the considerations of efficiency, fairness, and federalism will depend on the facts of each case. *Id.* (citing *Hoey*, 773 F.3d at 759). Here, factors one and two weigh minimally in favor of exercising jurisdiction, factor three is neutral, and factors four and five weigh heavily against exercising jurisdiction due to the unsettled nature of the state law interpretations of Chapter 365 and other issues presented in Plaintiffs' Complaint. Because factors four and five so heavily outweigh factors one through three, the Court, in its discretion, chooses not to exercise jurisdiction over these novel questions of Ohio law. *See Scottsdale*, 211 F.3d at 968-69 (affirming a district court's decision to decline jurisdiction where only the fourth factor weighed against exercising jurisdiction). In the interest of federalism, the Court believes these novel questions of law are best reserved for the Ohio state courts to answer in the first instance.

### 3.    Remaining State Law Claims (Counts Six through Eight)

The Court next turns to Plaintiffs' remaining state law claims. (Doc. No. 8 at PageID #300–02.)

In their Motion to Dismiss, Defendants submit that this Court should dismiss Plaintiffs' state law claims without prejudice for lack of jurisdiction.  (Doc. No. 26 at PageID #1512.)  Defendants assert that this would be particularly appropriate "if this Court dismisses all federal claims raised in the Amended Complaint based on *Twombly*."  (*Id.*)  In their Combined Response, Plaintiffs argue that this Court should exercise jurisdiction over Counts Six through Eight because the claims "are not novel nor are they complex," and because "[t]his Court has not dismissed any claims at all in this case."  (Doc. No. 30 at PageID #1556–57.)

Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once they have dismissed all claims over which they had original jurisdiction.  "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'"  *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "[A] district court has broad discretion to decide whether to exercise jurisdiction over state law claims."  *Smith v. Erie Cty. Sheriff's Dep't*, 603 F. App'x 414, 424 (6th Cir. 2015).  However, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."  *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996); *accord Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").  Similarly, pursuant to 28 U.S.C. § 1367(c)(1), district courts may decline to exercise supplemental jurisdiction over state law claims where "the claim raises a novel or complex issue of State law."

Here, the Court uses its "broad discretion" in deciding not to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *Smith*, 603 F. App'x at 424. The Court concludes that issues of comity support the Court's decision to decline jurisdiction over Plaintiffs' state law claims for the same reasons discussed above as related to Plaintiffs' declaratory judgment claim. *See supra*. Plaintiffs' federal claims have all been dismissed. Moreover, Plaintiffs' state law claims present the same novel issues of State law as discussed above because they hinge on novel interpretations of Chapter 365.[51] Such purely state-law decisions are better reserved for a state court. Accordingly, under both § 1367(c)(1) and § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Counts Six through Eight are hereby dismissed without prejudice for lack of jurisdiction.

### B.      Motion for Preliminary Injunction

Finally, the Court turns to Plaintiffs' Motion for Preliminary Injunction. (Doc. No. 23.)

This Court previously ordered Plaintiffs to file a Supplement to their Motion that, in relevant part, "clarifies which underlying claim(s) in the Amended Complaint correspond with each argument already asserted in Plaintiffs' Motion for Preliminary Injunction." (Doc. No. 22-1 at PageID #1200.) Thereafter, Plaintiffs filed their Supplement and indicated that their Motion is based on paragraphs 31 through 36 and 51 of their Complaint (which do not correspond to any particular claim), and paragraphs 61 through 65 of the Complaint corresponding to Count One. (Doc. No. 24 at PageID #1445–46.) Thus, Plaintiffs' Motion is entirely premised on Count One. (*Id.*) However, because

---

[51] For example, Count Six alleges a claim for unjust enrichment based on the allegations that "Defendants knew that [Chapter 365] did not apply to limited liability companies" but still "forced and continue to force … Plaintiffs to comply with [Chapter 365]" including by requiring Plaintiffs to pay rental registration fees. (Doc. No. 8 at PageID #300–01.) The evaluation of this claim thus implicates the same novel issues of state law—e.g., whether Chapter 365 applies to limited liability companies as "owners."

52

this Court has declined to exercise jurisdiction over Count One, that renders the pending Motion for Preliminary Injunction moot. *See Doe No. 1. v. Bethel Local School District Bd. of Educ.*, 2023 WL 5018511, at \*23–24 (S.D. Ohio Aug. 7, 2023) (denying motion for preliminary injunction as moot because it was premised on state-law claims that the court declined supplemental jurisdiction over). Accordingly, Plaintiffs' Motion is denied as moot.

## V.      Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** as follows.  Counts Two through Five are dismissed.  The Court declines to exercise jurisdiction over Counts One, Six, Seven, and Eight, and accordingly, those counts are dismissed without prejudice.  Plaintiffs' Motion for Preliminary Injunction is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

      *s/Pamela A. Barker*
      PAMELA A. BARKER
Date:  August 29, 2025      U. S. DISTRICT JUDGE